[No. 1014-1.    Division One—Panel 2.    September 11, 1972.]

JOSEPH D. MEHELICH, *Respondent*, v. JOSEPH P. MEHELICH et al., *Appellants*.

*Hennings, Maltman & Weber* and *John R. Weber,* for appellants.

*Ostrander, Van Eaton & Thomas* and *Clinton F. Ferrell,* for respondent.

SWANSON, J.—Joseph P. Mehelich and wife Helen appeal from a judgment imposing a constructive trust in favor of appellant Joseph P. Mehelich's father, Joseph D. Mehelich, to the extent of the value of a life estate in the respondent father in certain realty. Findings of fact 3, 4, 5, 6, 7 and 8, to which no error is assigned, explain the transaction.

[3]
That in May, 1949, the defendants [Joseph P. and Helen L. Mehelich] located a house at 4019 - 124th [214th] Avenue S.W., Mountlake Terrace, Washington, approximately one half mile due west of his house, which was for sale for $4,400.00; that the terms of sale required cash to be paid down to a mortgage of approximately $1,100.00, (defendants' Exhibit #7); that on May 28, 1949, defendants signed the agreement to purchase the house through the Busy-Bee Realty, after plaintiff [Joseph D. Mehelich] and his wife looked at it and agreed to live there;

[4]
That the defendants contacted Mr. Z. L. Leslie, of Leslie Securities, Inc., to obtain financing, and attempted to borrow funds on a G.I. loan, which was denied because he would not be living in the house; thereafter Leslie Securities, Inc. loaned him $3,430.00 and took a mortgage from the defendants on the property purchased; that the said purchase was closed at Busy-Bee Realty on June 20, 1949, with the funds from Leslie Securities, Inc., by a deed to defendants, subject to a mortgage to Bothell State Bank of $1,117.52, with monthly payments of $35.00 (defendants' Exhibit #15);

[5]
That prior to the purchase of this property, plaintiff and his wife were paying rent of $35.00 per month at

their apartment, and in June, 1949, they met at Leslie Securities, Inc. office with defendants and Mr. Leslie determined that plaintiff could conveniently pay $35.00 per month;

[6]

That subsequently Leslie Securities, Inc. bought the underlying mortgage from Bothell State Bank (defendants' Exhibit #14), which amount was repaid by the defendant son in a total amount of $1,624.47; that the said increase was accomplished on February 1, 1950, by an agreement increasing the contract balance on defendants' house in the amount of $1,624.47 and increasing his monthly payment to $35.00 per month (defendants' Exhibit #6); that from February 1, 1950, at a starting balance of $3,000.00, plaintiff paid off the defendant's mortgage at $35.00 per month until a final payment of approximately $600.00 was made in 1958 by a friend of the plaintiff, (defendants' Exhibit #13); that at that time the mortgage satisfaction was mailed to the defendants (defendants' Exhibit #19); that at no time did the plaintiff realize that the defendants had ever signed a mortgage on the house;

[7]

That until 1959 plaintiff paid the real estate taxes on the property; that at that time plaintiff lost his job and was financially unable to pay the taxes thereafter; that from that time on the defendants paid all of the real estate taxes; that the fire insurance was paid by plaintiff for some periods and by the defendants for other periods;

[8]

That during their occupancy of the premises, plaintiff and his wife redecorated the premises and spent substantial money and labor improving the premises generally; that both sons, Harold and Joe, spent considerable time and effort improving and working on the property along with plaintiff and neither son Harold nor Joe requested a receipt or payment from each other or from the plaintiff;

The trial court concluded upon these facts that a constructive trust ought to be impressed upon the proceeds of the sale of the real estate.

Appellants first assign error to finding 9 which states:

[9]

That neither the plaintiff nor the defendants have any degree of sophistication in real estate transactions;

The finding is based upon the trial court's interpretation of substantial evidence. Appellants' questioning of the use of the verb "have" instead of the verb "had" may have merit, but the meaning of the finding is clear and no prejudice is assigned to it.

Appellants also assign error to the italicized portion of finding of fact 10 which states:

[10]

*That there has never been a formalized agreement between plaintiff and defendants regarding the ownership interests of the parties in said properties;* that until the winter of 1969 defendants made no request and took no steps to remove plaintiff from the property in question; *that, further, until the winter of 1969, defendants made no adverse claims against the plaintiff regarding interests in this property;* that, in 1958, when the final payment was made on the property, plaintiff demanded delivery of the deed, which demand was refused by the defendants;

Substantial evidence supports this finding, even though it is not as clearly drawn as it might have been.

Appellants' third assignment of error is directed to finding of fact 12 which states:

[12]

That when plaintiff and his now deceased wife joined together with defendants, the purpose to be accomplished was the acquisition of a house for the elderly parents to reside in, and the parties were not concerned with title, and made no specific agreement regarding ownership; that plaintiff, his deceased wife, and defendants, together, acquired a piece of property, and in 1949 these parties were venturing into some kind of joint venture, the details of either parties' interest in which were never articulated; that the purpose of this acquisition was to provide the parents with a place to live the rest of their lives, after which the property would belong to defendant son, Joseph P. Mehelich, and his wife;

Appellants claim that the use of the term "joint venture" in the absence of substantial evidence supporting a finding of the legal elements of a joint venture makes the entire finding erroneous. In making this argument, appellants overlook the context in which the words "joint venture" were used. Clearly, when examined in the proper context, the words are not used as a term of art but are intended to be descriptive only. The finding is supported by substantial evidence.

█ Appellants' remaining assignments of error are directed to the trial court's conclusion that a constructive trust should be imposed to give the respondent an interest in the proceeds of the sale of the real estate to the extent of a life estate. The question this court must resolve is whether or not the findings of fact support this conclusion.

In resolving that question, we consider the following language in *Seventh Elect Church in Israel v. First Seattle Dexter Horton Nat'l Bank,* 162 Wash. 437, 440, 299 P. 359 (1931), which was quoted with approval in *Scymanski v. Dufault,* 80 Wn.2d 77, 491 P.2d 1050 (1971), to be significant:

> Where, for any reason, the legal title to property is placed in one person under such circumstances as to make it inequitable for him to enjoy the beneficial interest, a trust will be implied in favor of the persons entitled thereto. This arises by construction of equity, independently of the intention of the parties. Equity will raise a constructive trust and compel restoration, where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means, gains something for himself which, in equity and good conscience, he should not be permitted to hold.

Appellants argue that in absence of a specific finding of fraud or wrongdoing on their part, the court erred in concluding that a constructive trust should be found. We do not believe such a narrow interpretation ought to be placed upon the guidelines recognized in this state for the creation of a constructive trust. *Scymanski v. Dufault, supra.* The trial court pointed out in his oral opinion:

We have several people joining together in some form or fashion to accomplish a particular task—acquiring a house and property for some elderly parents to reside in. I am sure that as of that moment in 1949 when the four people were together discussing this, deciding to go ahead with the venture, that no one really thought about whether this was a transaction in which one or the other was going to have this form of title or that form of title or what exactly the holding of the respective parties were.

. . .

The difficult part is what type of venture were they going into, so that one party or the other had some specified interest. I do not think they even got down to the point of talking about it. What appears to the court is what these four people were doing was they were acquiring a piece of property with a residence on it and doing some work on it and it was a place for the father and mother to live for the rest of their lives, after which the property would be Joseph and Helen's. I do not see how you could come to any other conclusion.

We agree. Even though the trial court was unable to determine from the testimony presented the precise nature of the interest which the respective parties would have in the property, the testimony contains substantial evidence to support a finding that their objective was to buy a home in which the parents could live until their death, after which the son and daughter-in-law would own it. The trial court's finding of fact 12 states in part:

that the purpose of this acquisition was to provide the parents with a place to live the rest of their lives, after which the property would belong to defendant son, Joseph P. Mehelich, and his wife;

Further, it is clear from the trial court's findings that the parents thought they were buying the property rather than renting it, whereas the son and daughter-in-law believed that *they* were buying the property and only renting to the son's parents. At various times the parents acted towards the property as if they owned it by placing substantial improvements upon the property, paying real estate taxes, fire insurance premiums, and making no further payments after

the mortgage was satisfied in 1958. The fact that the appellant son did not demand rent after 1958, and his conduct in assisting his parents in improving the property can be interpreted as consistent with a fee interest rather than a leasehold interest, in the property on the part of his parents.

■ The record indicates that a confidential relationship existed between the parties at the time the property was purchased, marked by the failure of the appellant son to disclose and the respondent father to inquire about the details of the transaction. The father's testimony indicates that he simply trusted his son to handle the matter. *See McCutcheon v. Brownfield*, 2 Wn. App. 348, 467 P.2d 868 (1970). In finding of fact 1, which is not disputed, the trial court indicated that the relationships within the family have been most cordial, trusting and frequent until the present lawsuit arose.

The confidential relationship that existed between the parties makes it unconscionable to deprive the respondent of a life estate in the property. We hold that under the facts of this case, the situation of trust and confidence manifested in the family relationship of these parties is sufficient to support the trial court's conclusion that a constructive trust ought to be imposed to the extent of a life estate in favor of the respondent father. *See* 1 A. Scott, *The Law of Trusts*, § 44.2, at 337 (3d ed. 1967). Indeed, we believe that to hold otherwise would be to allow the unjust enrichment of the appellants at the expense of the respondent. The trial court properly avoided such a result by imposing a constructive trust. *See* 5 A. Scott, *The Law of Trusts*, § 462.2, at 3417 (3d ed. 1967). As our state Supreme Court observed in *Scymanski v. Dufault, supra* at 89:

> A constructive trust may arise even though acquisition of the property was not wrongful. It arises where the retention of the property would result in the unjust enrichment of the person retaining it.

■ Appellants also argue that the trial court erred in failing to apply the doctrine of laches to respondent. They

assert that the respondent father's failure to commence an action against appellants in 1958 when appellants refused to give him a deed upon his demand should be a complete bar to any recovery today. In view of our conclusion set forth earlier in this opinion that substantial evidence supports the trial court's finding of fact 10, in addition to the other findings which constitute the facts of this case, we are not convinced that it would be proper to invoke laches doctrine. Moreover, the application of laches would be particularly inappropriate in this case because of the confidential relationship existing between the parties at all relevant times. *See* 5 A. Scott, *The Law of Trusts*, § 481.1, at 3464 (3d ed. 1967).

Finally, appellants complain that the trial court should not have chosen as its basis for computing damages the interest factor of 6 percent but rather should have used the 3.5 percent figure indicated in the mortality tables prepared by the state Insurance Commissioner to which the trial court made reference in his oral opinion. We do not believe that the 6 percent figure is unreasonable.

Judgment affirmed.

FARRIS, A.C.J., and ARMSTRONG, J., concur.