Claude ISENHOWER, Appellee,

v.

Jacquita L. DUNCAN, Farmers and Merchants Bank of Tecumseh, Oklahoma, and Lucille Alsup, Appellants.

No. 54469.

Court of Appeals of Oklahoma, Division No. 2.

May 19, 1981.

Rehearing Denied July 14, 1981.

Certiorari Denied Sept. 15, 1981.

Released for Publication by Order of Court of Appeals Sept. 17, 1981.

Don S. Bushong, Shawnee, for appellee.

Margaret J. Herrington, Tecumseh, Robert H. Jones, Shawnee, for appellants.

BOYDSTON, Judge.

This case has its beginning in 1963 when Beatrice Duncan, an elderly career schoolteacher, married Claude Isenhower, an elderly busdriver.[1] It was a first marriage for each.

At the time of the marriage, Beatrice had two bank accounts—one for checking and one for savings.[2] Claude had only a checking account. They chose to keep their separate accounts but later added each other's names to the signature cards and became joint tenants.

Several years before the marriage, Claude added his brother, Cecil, to his account. He testified his sole purpose was to allow his brother to pay medical or funeral bills in case "something happened to him." Claude stated he did not intend to create a beneficial interest in his brother.

Beatrice likewise added her brother, W. M. Duncan, to her checking account prior to the marriage. He remained on the account after Claude was added, again, in case "something happened to them." The checking and savings accounts established premaritally by Beatrice, and a $2,000 Certificate of Deposit (CD) purchased from Beatrice's funds after the marriage which named Claude as joint tenant are the accounts which are the subjects of this action.

In 1971, W. M. Duncan died. His daughter, Jacquita Duncan, Beatrice's niece, was then added to all her aunt's accounts in place of her deceased father. Jacquita was also added to the $2,000 CD. On each account she was denominated a joint tenant.[3] Neither Jacquita, her father W. M. Duncan, nor Claude's brother Cecil ever made a deposit or a withdrawal from any of the accounts during Beatrice's lifetime.

On May 17, 1977 Beatrice died. Jacquita testified she wrote checks on her aunt's account at that time at Claude's request to cover Beatrice's funeral expenses and to pay for the headstone. Because there were insufficient funds in the account to cover these items, Jacquita testified she cashed the $2,000 CD and deposited the proceeds to the checking account.

Shortly thereafter, Jacquita made a withdrawal of $10,000 from Beatrice's saving account which had not been authorized by Claude. With these funds she purchased two $5,000 CD's naming herself and her mother, Lucille Alsup, as joint tenants.

She then withdrew all remaining funds from both the savings and checking accounts and purchased yet another CD in the amount of $2,548.19 also in the names of herself and her mother.

When Claude learned of these transactions, he demanded return of the money. When his demand was ignored, he brought suit to recover the funds.

His petition alleges basically the same facts as previously set forth. He asked the court to impose a constructive trust for his benefit upon the CD's and for a return of the converted funds which he alleged came to a total of $15,509.05.

Jacquita's answer alleged Claude was only entitled to one-half the sums of money on deposit in the accounts of Beatrice at the date of her death, less all medical expenses

---

1. The couple retired from their respective employments four years after the marriage.

2. Beatrice had substantially greater assets than Claude.

3. Her father had not been made a joint tenant. The signature card he signed was marked "subject to check by W. M. Duncan."

and funeral expenses paid from said accounts and less two checks totalling $960.86 drawn against the accounts by Claude after Beatrice's death.[4] Jacquita further offered to pay into court the net balance according to her calculations of $3,632.45.

■ The case was tried to the court. The court found Beatrice had named Jacquita L. Duncan to the account as joint tenant for convenience only, and that it was not the intent of Beatrice or Claude to make a gift to her. He declared the CD's were held by Jacquita and her mother[5] in constructive trust[6] and entered judgment of $14,696.67 in favor of Claude with interest at 12 percent until paid. Costs of the action were assessed against Jacquita and her mother.

Jacquita and her mother now appeal, alleging the following points of error:

(1) The trial court's judgment is against the clear weight of the evidence;

(2) The court erred in overruling Jacquita's demurrer to the evidence and in awarding judgment to Claude for the reason Claude failed to sustain his burden of proof;

(3) The court erred in awarding Claude $14,696.67, including accrued interest in certain CD's for the reason that Claude failed to offer sufficient evidence to prove that he was entitled to the entire amount of said CD's;

(4) The trial court erred in failing to deduct from the judgment all medical and funeral expenses.

**4.** In its final decision the court deducted the $960.86 from the amount of the judgment because these checks were written by Claude. The court did not deduct the medical and funeral expenses.

**5.** The court found Lucille Alsup, Jacquita's mother, had no interest in the CD's.

**6.** Technically the funds initially came into her possession without fraud, deceit or subterfuge thereby creating a simple trust. The nature of her possession was altered to that of constructive trust only when she exceeded the limits of

It is to these issues we direct our attention, the first two of which are considered together for purposes of this discussion.

## I

■ In a case of equitable cognizance, the trial court's decision should be upheld unless clearly against the weight of the evidence.[7]

■ The evidence in this case was primarily the oral testimony of the parties involved. Their credibility and the weight and value assigned to conflicting or inconsistent testimony are matters primarily for determination by the trial court.[8] In this instance it is obvious the court chose to place more credibility upon the testimony of Claude. Further, we believe the record discloses substantial evidence to support court's decision.[9]

Before their marriage both Claude and Beatrice had made arrangements for a simple disposition of their modest estates by authorizing other trusted persons to have legal access to their bank accounts for the limited purpose of carrying out their wishes in the event of their deaths. This simple plan of disposition was carried over into the marriage and provided that the surviving joint tenant was to become a trustee. Jacquita was added to the account in case something happened to Beatrice and Claude simultaneously. In that event, she was to pay any medical and/or funeral bills and then distribute the remainder among her family. It was, in fact, her own testimony which establishes this. The trial court correctly concluded Jacquita was added to the accounts in question for this limited purpose and therefore her rights to the funds were only nominal.

her trusteeship by attempting to convert the funds to her own use.

**7.** *King v. Rainbolt*, Okl., 515 P.2d 228 (1973).

**8.** *Catron v. First National Bank & Trust Co. of Tulsa*, Okl., 434 P.2d 263 (1967).

**9.** We need not discuss the overruling of Jacquita's demurrer as this issue was waived by attorney's failure to renew the motion at the conclusion of the trial.

Jacquita was clearly expected to act solely as a trustee. Instead, she exceeded her authority and converted the balance for herself and her mother. We note she initially claimed all the monies. Later she changed her position, claiming only half the money before funeral expenses and doctor bills. She admittedly conferred with Claude before the checks were written for funeral expenses and cashed and deposited the $2,000 CD with his knowledge and approval yet clandestinely converted the remaining balance.

 The supreme court has held such a trust is enforceable under the proper circumstances. In *Peyton v. McCaslin*, Okl., 417 P.2d 316 (1966) the court held:

> When circumstances surrounding acquisition of money by surviving joint tenant in joint bank account are such as to indicate that beneficial interest in money is not to go with surviving joint tenant's legal title and that third person may have valid beneficial interest in that money, equity will be invoked to ascertain status of subject of dispute and relative rights of contenders therefor .... If one obtains legal title to property ... *by violation of confidence or fiduciary relationship* ... equity carries out the theory of double ownership, equitable and legal by imposing constructive trust upon property in favor of one who is considered ... beneficial owner. (emphasis added) [10]

*Brown v. Greever*, Okl., 379 P.2d 689 (1963) requires such a trust be established by clear, unequivocal and decisive evidence.

Each trial, like each case, must be considered in the light of its own peculiar developments and circumstances, and, accordingly, the rule must be applied intelligently.[11]

In the case at bar the trial court made findings of fact amply supported by the evidence that Jacquita's status was that of "fiduciary." The CD's purchased by her are directly traceable to the funds withdrawn and we conclude a constructive trust was properly imposed by the court in favor of surviving husband.

## II

The remaining issues both deal with the correctness of the amount of the judgment awarded and will therefore be considered together.

At the time of Beatrice's death, the balance of her accounts totaled $16,027.19.

Jacquita wrote checks for the expenses of last illness and for the funeral which totalled $3,420.28. This left a balance of $12,606.91. Claude made additional withdrawals of $980.86 leaving a balance of $11,626.05.

 The court awarded a judgment of $12,548.19 [12] plus accrued interest in the amount of $2,148.48 for a total of $14,696.67. This represents the exact amount of money Jacquita testified she withdrew from the various accounts and put into the CD's in her and her mother's name. We find no mathematical error in the amount awarded.

Further, Jacquita's contention that she should be reimbursed for funeral expenses and the expenses of last illness is without merit. These items were paid from the joint account which became Claude's by right of survivorship at Beatrice's death. When Jacquita wrote the checks to cover

10. Where, as here, the parties involved create a joint tenancy by express words of joint tenancy and survivorship, the survivorship interest can be sustained by the fact of compliance with 60 O.S.1971 § 74 standing alone and the survivor will take legal title. However, where he takes title through breach of a fiduciary relationship, he will not receive the beneficial interest. *Alexander v. Alexander*, Okl., 538 P.2d 200 (1975).

11. *Peyton v. McCaslin, supra.*

12. The discrepancy between the amount of money remaining in the account and the amount of the judgment is due to the fact that there were other banking transactions which were not explained at trial.

these expenses, she was doing nothing more than carrying out the fiduciary acts which her aunt had requested. The money expended was not hers. It was Claude's. Because she was acting merely as a trustee in relation to these funds, she is in no way entitled to reimbursement for their expenditure.

We therefore affirm the judgment of the trial court, award appellee attorney fees in amount of $1,500 and tax cost of this appeal to appellants.

BACON, P. J., and BRIGHTMIRE, J., concur.