[No. 11698–3–I.   Division One.   July 30, 1984.]

*In the Matter of the Estate of* ANNA P. RANDMEL, ET AL, *Appellants,* v. JULIE A. POUNDS, *as Executrix, Respondent.*

*Asmundson, Atwood & Emmons, T. B. Asmundson, Jones & Isham,* and *Don Isham,* for appellants.

*Richard Beresford,* for respondent.

SWANSON, J.—Bennie Randmel and Sylvia Lundh timely appeal from a summary judgment dismissing their petition

to compel the executrix, Julie Pounds, to include in the inventory of their deceased mother's estate moneys held in three joint–tenant bank accounts. We reverse.

Anna P. Randmel, a widow, died in Seattle, Washington on September 9, 1981, leaving three children, Julie A. Pounds, Sylvia M. Lundh, and Bennie B. Randmel. By a will executed on December 17, 1980, Randmel appointed Pounds as her executrix and left her estate to her children in three equal shares. In the month preceding her death, Anna converted three[1] of her individual bank accounts (the bulk of her estate) to joint–tenant accounts with rights of survivorship by executing new signature cards with her daughter, Julie Pounds. Pounds deposited none of her personal funds into the accounts.

Lundh and Bennie Randmel petitioned the King County Superior Court to order the executrix, Pounds, to include the joint–tenant bank accounts in the estate's inventory. Pounds responded by moving for a summary judgment to dismiss the petition on the grounds that former RCW 30.20.015[2] and former RCW 32.12.030(3)[3] mandated that

---

[1]Although all briefs on appeal contend that three accounts were converted, the affidavit of Julie A. Pounds indicates five accounts were converted, one each at four mutual savings banks and one at First Interstate Bank.

[2]RCW 30.20.015 (1981) provided:

"After any deposit shall be made in a national bank, state bank, trust company or any banking institution subject to the supervision of the supervisor of banking of this state, by any person in the names of such depositor and one or more other persons and in form to be paid to any of them or the survivor of them, such deposit and any additions thereto made by any of such persons after the making thereof, shall become the property of such persons as joint tenants with the right of survivorship, and the same, together with all interest thereon, shall be held for the exclusive use of such persons and may be paid to any of them during their lifetimes or the survivor or survivors. *The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor is a party, of the intention of the depositors to vest title to such deposit and the additions thereto in the survivor or survivors.*" (Italics ours.)

[3]RCW 32.12.030(3) (1981) provided:

"(3) After any deposit shall be made by any person in the names of such depositor and one or more other persons and in form to be paid to any of them or

the funds in the accounts be conclusively presumed to have vested in her as the surviving joint tenant.[4]

At the hearing on the summary judgment motion, Sylvia Lundh and Bennie Randmel moved to amend their complaint to include an allegation of fraud and undue influence on the part of their sister Julie Pounds. After oral arguments the trial court denied the motion to amend the complaint and granted Pounds' motion for summary judgment. Lundh and Randmel timely appeal.

CR 15(a) provides that once a responsive pleading is served,

> a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires.*

(Italics ours.) Our Supreme Court adopted CR 15(a) "to facilitate the amendment of pleadings except where prejudice to the opposing party would result.'" *Caruso v. Local Union 690 of Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 349, 670 P.2d 240 (1983), quoting *United States v. Hougham,* 364 U.S. 310, 316, 5 L. Ed. 2d 8, 81 S. Ct. 13 (1960). In light of the lack of prejudice resulting to Julie at the summary judgment juncture of the proceedings from the granting of the motion to amend the pleadings, the trial court erred by denying the motion to amend the pleadings.

---

the survivor of them, such deposit and any additions thereto made by any of such persons after the making thereof, shall become the property of such persons as joint tenants, and the same, together with all dividends thereon, shall be held for the exclusive use of such persons and may be paid to any of them during their lifetimes or to the survivor or survivors and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to such savings bank for all payments made on account of such deposit prior to the receipt by such savings bank of notice in writing not to pay such deposit in accordance with the terms thereof. *The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of all depositors to vest title to such deposit and the additions thereto in the survivor or survivors."* (Italics ours.)

[4]RCW 30.20.015 and RCW 32.12.030 were repealed effective July 1, 1982. *See* Laws of 1981, ch. 192, § 33, p. 882.

Had the pleadings been amended, all affidavits filed before the trial court heard oral argument on the summary judgment motion should have been considered, rather than only the affidavit of Julie Pounds and that of Cynthia McAdams, a bank teller.[5] *See Millikan v. Board of Directors of Everett Sch. Dist. 2,* 92 Wn.2d 213, 595 P.2d 533 (1979). The resulting question revolves around the level of proof the opposing party must bear to establish the existence of a genuine issue as to a material fact.

The trial court concluded that Lundh and Randmel had to prove fraud or undue influence by clear, cogent, and convincing evidence at the summary judgment stage of the proceedings. Although this is the proper standard of proof at trial, *Doty v. Anderson,* 17 Wn. App. 464, 467, 563 P.2d 1307 (1977), it is not the proper standard to be applied to determinations regarding summary judgment motions. As our Supreme Court said with respect to the defendant's motion for summary judgment in *Meadows v. Grant's Auto Brokers, Inc.,* 71 Wn.2d 874, 881, 431 P.2d 216 (1967):

> However complex and intricate plaintiff's problem of proof at the time of trial may be, plaintiff at this stage of the proceeding is entitled to all favorable inferences that may be deduced from the varying affidavits.

We said in *Doty v. Anderson, supra,* that the following factors, considered when determining whether a will was invalidated by undue influence, are also appropriate to consider when determining whether there was a sufficient showing of undue influence to overcome the statutory presumption of RCW 30.20.015 and RCW 32.12.030(3):

> (1) that the beneficiary occupied a fiduciary or confidential relation to the testator; (2) that the beneficiary actively participated in the preparation or procurement of the will; and (3) that the beneficiary received an unusually or unnaturally large part of the estate.

---

[5]The affidavits of two attorneys who had drafted wills for Randmel and the affidavits of two granddaughters had been on file since December of 1981 but were not considered by the court in making its decision to grant the summary judgment.

> Added to these may be other considerations, such as [4] the age or condition of health and mental vigor of the testator, [5] the nature or degree of relationship between the testator and the beneficiary, [6] the opportunity for exerting an undue influence, and [7] the naturalness or unnaturalness of the will. The weight of any of such facts will, of course, vary according to the circumstances of the particular case.

(Footnote omitted.) *Doty,* at 467–68, quoting *In re Estate of Esala,* 16 Wn. App. 764, 766, 559 P.2d 592 (1977).

First, Pounds served in a fiduciary or confidential capacity with respect to her mother Anna's business affairs. Diane Frye, Anna Randmel's granddaughter, stated in her affidavit that after the death of Anna's husband, Anna relied upon her daughter Julie "to take care of all her business affairs and to explain these affairs to her because she didn't understand them."

Second, although there is no direct evidence that Julie actively participated in the "procurement" of the joint–tenant bank accounts, this may be inferred from Julie's fiduciary or confidential relationship when buttressed by the bank teller's statement in her affidavit that Julie did "most of the talking" at the bank when changing the accounts and that Anna changed the accounts to facilitate the handling of her estate.

Third, it appears that Julie received an unnaturally large part of the estate (roughly 70 percent). The affidavits suggest that prior to changing the accounts, and from the date of the death of Anna's husband (as well as sometime prior thereto), Anna had wanted her estate divided equally between her three children. That estate included proceeds from the sale of Anna's home, most of which were deposited into the accounts which were later changed to joint–tenant accounts. Additionally, the bank teller, Cynthia McAdams, affirmed in her affidavit that Anna stated,

> that she was very ill and did not expect to live much longer; that she was putting her affairs in order, so that Julie A. Pounds, whom, she stated, she had named as

executrix in her will, would have less difficulty in handling her estate.

Consequently, it may be inferred that Julie received an unnaturally large portion of the estate.

As to the fourth consideration, Anna's personal physician indicated that Anna was lucid and coherent up to the time of her death, and one of the bank's employees affirmed that Anna understood that by having Julie's name on the account Julie could withdraw all of the funds without first obtaining Anna's authorization. There is no indication, however, that Anna understood that upon her death Julie, as a joint tenant with rights of survivorship, could claim legal title to all the money in the joint–tenant accounts.

Fifth, as stated above, Julie maintained a confidential relationship with Anna, particularly with respect to Anna's financial affairs.

Sixth, Julie had an opportunity to exercise her influence due to her control of Anna's financial affairs because she was Anna's only child residing in the Seattle area.

Finally, although adding Julie's name to the bank accounts may not have been an unnatural act between a mother and child, the associated facts suggest that this act contravened Anna's (and her late husband's) desire that the three children share equally in the division of the estate.

Consequently, considering all inferences in the light most favorable to Sylvia Lundh and Bennie Randmel, the affidavits furnished sufficient evidence to present an issue of material fact regarding undue influence which would preclude the granting of a summary judgment. Accordingly, we remand for trial.

However, a significant issue remains which may arise on remand. In the event the fact finder does not find fraud or undue influence, the trial court must then decide whether Julie Pounds was a "surviving depositor" within the terms of former *RCW 30.20.015* and former *RCW 32.12.030(3)* so as to invoke the *conclusive presumption* provisions in such statutes that money in the joint–tenant bank accounts with survivorship rights vested in Julie Pounds as the surviving

depositor.

Under facts similar to those presented here, the court in *Tripp v. Scott,* 29 Wn. App. 869, 631 P.2d 973 (1981) stated that the conclusive presumption did *not* arise because there was no evidence that the surviving cosignator on the accounts, a daughter of the deceased, had deposited money into the accounts and therefore was not a "surviving depositor" under the statute. This analysis is in conflict with a consistent line of cases of which *In re Estate of Douglas,* 65 Wn.2d 495, 398 P.2d 7 (1965), and *Doty v. Anderson,* 17 Wn. App. 464, 563 P.2d 1307 (1977), are representative. The rule found in *In re Estate of Douglas* and *Doty* is that a joint tenant with rights of survivorship in a bank account need not have deposited his or her own funds into the account to be considered a "surviving depositor" within the meaning of the statutes.

In *In re Estate of Douglas,* Roy and Maude Douglas executed a signature card which changed Roy's previously separate checking account into a joint checking account with the right of survivorship annexed. Maude survived Roy for only several months. Thereafter, the personal representatives for both estates contested for the funds in the account. The court found no evidence of fraud or undue influence, nor any community property conflict, and concluded that the conclusive presumption of RCW 30.20.015 arose in favor of Maude's heirs.

The several bank accounts involved here were in Anna Randmel's name. New signature cards were executed with Julie Pounds' name added. As the court stated in *Doty v. Anderson,* at 467,

> When there is an existing bank account and a new signature card is executed with an additional name, this action is deemed to have the same effect as a deposit under RCW 30.20.015. *In re Estate of Douglas,* 65 Wn.2d 495, 398 P.2d 7 (1965); *In re Estate of Green,* 46 Wn.2d 637, 283 P.2d 989 (1955).

We would follow the interpretation of the statutes in question as enunciated in *In re Estate of Douglas* and *Doty*

*v. Anderson.*

We remand for proceedings consistent with this opinion.

CALLOW and RINGOLD, JJ., concur.

Reconsideration denied October 2, 1984.