[No. 59243-8. En Banc. January 21, 1993.]

WILLIAM L. BAKER, *as Administrator, Appellant,* v. PEARL L. LEONARD, *Respondent.*

*Baker, Paroutaud, Mano & McKerricher, Inc., P.C.,* by *Richard A. Paroutaud,* for appellant.

*Armstrong, Vander Stoep, Remund & Kelly,* by *J.A. Vander Stoep,* for respondent.

DOLLIVER, J. — Plaintiff William L. Baker, administrator of the estate of Ada G. McDonald, seeks review of the trial court's grant of summary judgment in favor of defendant Pearl L. Leonard and its denial of plaintiff's motion for summary judgment. The trial court ruled there was no evidence of fraud or undue influence, and therefore amounts deposited in a joint checking account with right of survivorship was conclusive evidence of intent to vest title in the surviving depositor pursuant to former RCW 30.20.015. Because there was no evidence of fraud or undue influence, the court also ruled the statute precluded the imposition of a constructive trust on the proceeds of the account. We affirm.

Ada McDonald, a widow, died testate on October 18, 1988. Paragraph 4 of her last will and testament, properly executed on June 2, 1982, provided:

> I acknowledge that I have now or may hereafter have checking, savings and/or certificates of deposits held in joint names with others. Such accounts are for convenience purposes only and without the intent of conveying any interest therein to the joint signator. It is my intent that such accounts be included in and distributed as part of the residue of my estate.

The original beneficiaries of the residue under the will were Kenneth P. McDonald, son, William L. Baker, brother, and Margaret M. Balliauw, sister. "[M]y sister Margaret M. Balliauw", who had died, was subsequently changed to "friend Pearl Leonard". The two other residuary beneficiaries signed a notarized document "accept[ing]" the alteration. But, Geraldine Deschamps, the decedent's ex-daughter-in-law and

friend, testified that the handwriting and initials were not the decedent's. Plaintiff, in his motion for summary judgment, asserted the probate court ruled the modification was not enforceable; however, the validity of the modification is not at issue in this case.

On June 28, 1982, defendant Pearl Leonard and Nina Prigmore, not a party to this lawsuit, were added as joint tenants with right of survivorship to an existing checking account on which McDonald was previously the sole depositor. Leonard had known McDonald since the 1940's and saw her on a regular basis for 10 or 15 years. After that time, they did not see each other until the late 1960's when they resumed their friendship following the death of McDonald's husband. Since 1985, Leonard helped McDonald by writing checks for her to sign and helping her keep track of her finances. Leonard testified she began helping McDonald with her finances, at McDonald's request, because McDonald would forget to pay bills or pay them twice.

Leonard testified McDonald and Deschamps brought the signature card to her house and asked her to sign it. Leonard stated she was not told why she was to sign the card. Deschamps stated Leonard and Prigmore were added to the account so they could help McDonald pay her bills while Deschamps was in Europe for 3 weeks. Deschamps testified that Leonard and Prigmore did not "try to urge or push" or "influence" McDonald to have their names put on the account.

Prigmore testified that she was also asked by McDonald and Deschamps to sign the signature card. Prigmore states she and McDonald were "close friends", and that she "assumed" the reason she was asked to be a signatory on the checking account was so she could write checks in case McDonald became too ill. Prigmore further stated no one ever told her she was being added to the account because the money was being left to her as a gift and that she did not "influence" or "trick" McDonald into having her name added to the account.

Neither Deschamps, Leonard, nor Prigmore remember who checked the box on the signature card entitled "Joint with right of survivorship". The balance in the joint account on the date of McDonald's death was $35,270. Leonard and Prigmore never deposited any of their own money in the checking account. On February 9, 1989, Leonard transferred the entire sum to her personal account at the same bank. Leonard testified she felt that half of the money was Prigmore's although Prigmore's name was not added to the account. She also testified she had reason to believe McDonald intended to leave the money in the account as a gift because of the help she gave McDonald when her husband was ill.

Leonard was executrix under the will, but was removed by order of the court dated October 9, 1989, because of her delay in probating the estate; plaintiff William Baker was appointed as administrator on November 17, 1989. On January 25, 1990, plaintiff brought suit against Leonard seeking recovery of $35,270.73, the transferred proceeds of the bank account. On cross motions for summary judgment, the trial court on January 25, 1991, granted summary judgment in favor of defendant and denied judgment to plaintiff. No evidence of fraud or undue influence having been found, the court ruled former RCW 30.20.015 (in effect on the date the checking account was created) governed and established a conclusive presumption that the depositors intended title to such deposit be vested in the surviving depositors. The court also refused to impose a constructive trust on the proceeds concluding "that a constructive trust would have to arise out of some form of fraud or undue influence to overcome the conclusive presumption of RCW 30.20.015 cited above."

Plaintiff appealed to Division Two of the Court of Appeals, which certified the case to the Supreme Court pursuant to RAP 4.2 and RCW 2.06.030. We accepted direct review of the case.

I

■ Former RCW 30.20.015 provides:

After any deposit shall be made in a national bank, state bank, trust company or any banking institution subject to the

supervision of the supervisor of banking of this state, by any person in the names of such depositor and one or more other persons and in form to be paid to any of them or the survivor of them, such deposit and any additions thereto made by any of such persons after the making thereof, shall become the property of such persons as joint tenants with the right of survivorship, and the same, together with all interest thereon, shall be held for the exclusive use of such persons and may be paid to any of them during their lifetimes or the survivor or survivors. *The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor is a party, of the intention of the depositors to vest title to such deposit and the additions thereto in the survivor or survivors.*

(Italics ours.) *See* Laws of 1967, ch. 133, § 5, p. 636. The conclusive presumption was changed to a rebuttable presumption by the Financial Institution Individual Account Deposit Act, RCW 30.22.100(3), which became effective July 1, 1982. *See* Laws of 1981, ch. 192, § 34, p. 882. Plaintiff appropriately does not challenge that the law in effect at the time the account was created controls. *See In re Estate of Douglas,* 65 Wn.2d 495, 398 P.2d 7 (1965); *In re Estate of Fox,* 51 Wn. App. 498, 754 P.2d 690 (1988). Rather, he argues that because Leonard never deposited any funds into the checking account that she is not a "depositor" entitled to the conclusive presumption. Plaintiff relies on the Division Three case of *Tripp v. Scott,* 29 Wn. App. 869, 631 P.2d 973 (1981).

In *Tripp,* two beneficiaries under a will sued the executrix for misappropriation of assets. The decedent had deposited the bulk of his estate in bank accounts making the executrix a joint tenant with right of survivorship. The trial court granted summary judgment in favor of the executrix based on the conclusive presumption contained in former RCW 30.20.015. The Court of Appeals reversed holding that the executrix was not a "depositor" within the statute because she had not deposited any funds in the account. *Tripp,* 29 Wn. App. at 873. The court cited the definition of "depositor" in *Webster's Third New International Dictionary* (1969) ("one who places money in a bank") and the primary purpose behind the statute ("to protect the depository institution by

insulating it from disputes with the depositors") as rationale for its decision. *Tripp*, 29 Wn. App. at 873 n.2, n.4.

Defendant points out *Tripp* was criticized by Division One in *In re Estate of Randmel v. Pounds*, 38 Wn. App. 401, 408, 685 P.2d 638 (1984) wherein the court held *Tripp* was "in conflict with a consistent line of cases of which *In re Estate of Douglas*, 65 Wn.2d 495, 398 P.2d 7 (1965), and [a prior Division Three case] *Doty v. Anderson*, 17 Wn. App. 464, 563 P.2d 1307 (1977), are representative." *Randmel*, 38 Wn. App. at 408.

In *Douglas*, Roy and Maude Douglas executed a signature card changing Roy's separate checking account into a joint checking account with right of survivorship. Maude survived Roy by a few months and each estate sought the funds in the account. The court held the conclusive presumption of former RCW 30.20.015 arose in favor of Maude's heirs. The court stated:

> Though nothing in the statutory language indicates that a change of signature card equates to the making of a deposit, the execution of the new card in this manner suffices as a deposit in statutory form. *In re [Estate of Green]*, 46 Wn. (2d) 637, 640, 283 P. (2d) 989 (1955).

*Douglas*, 65 Wn.2d at 501. *In re Estate of Green*, 46 Wn.2d 637, 283 P.2d 989 (1955) involved a joint account with right of survivorship governed by the savings and loan statute, not by former RCW 30.20.015 which applied to commercial banks. The court found the creation of such a joint account depended upon the agreement of the original account holder and the savings and loan and held that the persons whose names appeared on the signature card were entitled to a presumption that they were to receive the proceeds of the account as survivors even though they never signed the signature card, never knew of the addition until after the death of the original account holder, and, presumably, never made any deposits to the joint account. *In re Estate of Green*, 46 Wn.2d at 640-41.

Following *Douglas* and *Green*, the court in *Doty v. Anderson*, 17 Wn. App. 464, 563 P.2d 1307 (1977) stated the rule as follows:

> When there is an existing bank account and a new signature card is executed with an additional name, this action is deemed to have the same effect as a deposit under RCW 30.20.015.

*Doty*, 17 Wn. App. at 467. The court applied this rule in favor of the persons named on the signature card even though there was a contrary intent expressed in the decedent's will. *Doty*, 17 Wn. App. at 467.

██ The general rule, in accord with *Douglas*, *Green*, and *Doty*, is that the intention of the parties creating the account or in changing the account from one type to another controls the question of who owns the funds. Further, when the intent of the deceased depositor is to create a joint tenancy with right of survivorship, the survivor is entitled to the proceeds even if the survivor was unaware of being added to the account. *See* 9 C.J.S. *Banks and Banking* § 286 (1938 & Supp. 1991); 10 Am. Jur. 2d *Banks* § 369 (1963 & Supp. 1992). Thus, if a statute conclusively presumes an intent to create a joint tenancy with right of survivorship from the creation of an account in that form, then the survivor is entitled to the proceeds even if the survivor never knew of the account and never made a deposit thereto.

The legislative history also supports the construction of the statute in *Douglas*. The Legislature is presumed to be familiar with the prevailing judicial interpretations of a statute when it amends the statute. *Seattle Sch. Dist. 1 v. Department of Labor & Indus.*, 116 Wn.2d 352, 361, 804 P.2d 621 (1991). Legislative silence regarding the construed portion of the statute in a subsequent amendment creates a presumption of acquiescence in that construction. *See Seattle Sch. Dist. 1*, 116 Wn.2d at 361. Here, subsequent to the interpretation of former RCW 30.20.015 by the *Douglas* court in 1965, the Legislature amended that section in 1967, but did not alter the wording of the conclusive presumption

provision. Consequently, the Legislature is presumed to have acquiesced in the judicial construction that a change in the signature card acts as a deposit for purposes of the statute. In addition, we note the application of the conclusive presumption of former RCW 30.20.015 was not limited, in practice, only to situations protecting depository institutions. *See generally* M. Reutlinger & W. Oltman, *Wills and Intestate Succession* 310-318 (1985).

Therefore, we construe former RCW 30.20.015 in conformity with *Douglas, Green,* and *Doty.* Persons who have been named on the account signature card as joint tenants with right of survivorship benefit from the conclusive presumption even though they have not deposited any of their own funds in the account. To the extent *Tripp* is in conflict with this opinion, it is overruled. The effect of this holding, of course, is limited because the conclusive presumption language of former RCW 30.20.015 was replaced by a rebuttable presumption. *See* RCW 30.22.100(3). This statute governs all accounts created after July 1, 1982. Laws of 1981, ch. 192, § 34, p. 882.

II

The other issue raised by plaintiff is whether a constructive trust should be imposed in favor of the estate even though we hold the legal title to the account funds is vested in Leonard under former RCW 30.20.015. The trial court found no evidence of fraud or undue influence and held:

> that a constructive trust would have to arise out of some form of fraud or undue influence to overcome the conclusive presumption of RCW 30.20.015 cited above.

The rationale for this conclusion appears to be that to allow a constructive trust to be imposed from circumstances not arising from fraud or undue influence, which can occur under common law, would undermine the effect of the statute.

However, what the statute provides for is a conclusive presumption as to the *intent* of the depositors.

> The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving

> depositor is a party, of the *intention of both depositors to vest title to such deposit and the additions thereto in such survivor.*

(Italics ours.) Laws of 1951, ch. 18, § 1, p. 36. The statute precludes evidence of a contrary intent as the *sole* basis for establishing a constructive trust. *See Douglas*, 65 Wn.2d at 501. If there is other evidence, apart from evidence of the decedent's contrary intent, which could establish the basis for a constructive trust, which does not rise to the level of fraud or undue influence, then the statute would not preclude the imposition of a constructive trust. The issue then is whether there is evidence, other than the evidence of a contrary intent found in McDonald's will, which warrants the imposition of a constructive trust.

■ Constructive trusts arising in equity are imposed when there is clear, cogent, and convincing evidence of the basis for impressing the trust. *Manning v. Mount St. Michael's Seminary*, 78 Wn.2d 542, 546, 477 P.2d 635 (1970). Courts use a variety of language to convey the circumstances when courts will intervene to compel the holder of legal title to convey the beneficial interest to the one who justly deserves it. While fraud, misrepresentation, bad faith, or overreaching generally provide the rationale for the imposition of a constructive trust, *Manning*, 78 Wn.2d at 546; *Ockfen v. Ockfen*, 35 Wn.2d 439, 443, 213 P.2d 614 (1950), constructive trusts are also imposed in broader circumstances not arising to fraud or undue influence.

> In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust . . ..

*Kausky v. Kosten*, 27 Wn.2d 721, 727-28, 179 P.2d 950 (1947) (quoting 4 S. Symons, *Equity Jurisprudence* § 1053, at 119 (5th ed. 1941)).

> A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another

on the ground that he would be unjustly enriched if he were permitted to retain it.

*Proctor v. Forsythe*, 4 Wn. App. 238, 242, 480 P.2d 511 (1971); *Thor v. McDearmid*, 63 Wn. App. 193, 206, 817 P.2d 1380 (1991).

The plaintiff cites *Scymanski v. Dufault*, 80 Wn.2d 77, 491 P.2d 1050 (1971) for the proposition that constructive trusts may arise even though the acquisition of legal title to property was not wrongful. However, in *Scymanski*, the holder of the legal title subject to the constructive trust had "intentionally interfered with another's business relationship and as a result of such interference ha[d] acquired the property that was the subject of that relationship" and upon which the constructive trust was imposed. *Scymanski*, 80 Wn.2d at 89.

In cases where there has been no evidence of fraud or wrongdoing, the courts have imposed constructive trusts when the evidence established the decedent's intent that the legal title holder was not the intended beneficiary. *See Mehelich v. Mehelich*, 7 Wn. App. 545, 500 P.2d 779 (1972). Here, the question of intent is foreclosed by the statute.

■ Unless an equitable base is established by evidence of intent, there must be "some element of wrongdoing" in order to impose a constructive trust. *See, e.g., Peste v. Peste*, 1 Wn. App. 19, 23, 459 P.2d 70 (1969); *Huber v. Coast Inv. Co.*, 30 Wn. App. 804, 810, 638 P.2d 609 (1981). Wrongdoing, however, is not confined to a particular category, such as fraud, misrepresentation, or bad faith, although one of these usually forms the basis for imposition of a constructive trust. *See Manning v. Mount St. Michael's Seminary*, 78 Wn.2d 542, 546, 477 P.2d 635 (1970). Equity's need for flexibility requires that wrongdoing not be so limited. Here, the plaintiff provides no evidence of wrongdoing, even in its broadest sense. Plaintiff's real contention regarding wrongdoing boils down to the claim that the conclusive presumption of the statute thwarts the "real" intention of McDonald. As we hold in part I, the question of intent is settled by the

statute. Therefore, equity does not demand the imposition of a constructive trust in this case.

Plaintiff cites cases from other jurisdictions wherein courts imposed constructive trusts on proceeds from joint accounts. *Estate of Aiello v. Moreland*, 106 Cal. App. 3d 669, 165 Cal. Rptr. 207 (1980); *Givens v. Rose*, 178 Ind. App. 590, 383 N.E.2d 448 (1978); *Peyton v. McCaslin*, 417 P.2d 316 (Okla. 1966); *Isenhower v. Duncan*, 635 P.2d 336 (Okla. Ct. App. 1981). We have examined each of these and find them to be distinguishable.

Affirmed.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.