FILED
COURT OF APPEALS
DIVISION II

2015 AUG 18 AM 9: 06

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DEBORAH DESPAIN, | No. 46321-1-II |
| Respondent, | |
| v. | |
| DUANE LUND, | UNPUBLISHED OPINION |
| Appellant, | |
| ESTATE OF GEORGE LUND, JR.; JOHN DOES 1-10, | |
| Defendants. | |

MAXA, P.J. — Duane Lund appeals the trial court's judgment in favor of his sister, Deborah Kellogg (formerly DeSpain), based on a ruling that their father, George Lund, held certain property specifically identified on a surveyor's diagram in constructive trust for Deborah.[1] The trial court ruled that imposing a constructive trust was appropriate because Deborah had moved onto the family property in reliance on George's promise to give the specifically identified property to her. Duane argues that a constructive trust could not be based on George's promise to give the specifically identified property to Deborah because that promise did not induce Deborah to move onto the family property – she already had been living on the

---

[1] In order to more easily identify the various members of the Lund family, this opinion refers to them by their first names. No disrespect is intended.

property for years at the time of *that* promise. Instead, Duane argues that Deborah previously had moved onto the family property in reliance on a more general promise to give her unspecified property amounting to one-third of the family property.

We agree with Duane. We hold that the trial court erred in concluding that the constructive trust encompassed the specifically identified property George promised to give to Deborah many years after she had moved onto the property. The evidence would support a legal conclusion only that Deborah is entitled to a constructive trust that encompasses the unspecified one-third of the property George promised to give to Deborah to induce her to move onto the family property. We remand for the trial court to address this issue.

We reverse and remand for proceedings consistent with this opinion.[2]

## FACTS

George Lund and his wife June (referred to collectively as George) purchased 40 acres of property in Cowlitz County and built a house in the middle part of that property at 2403 Mt. Pleasant Road. They raised their son, Duane, and their daughters, Deborah and Diane, on that land. George sold five acres of the property to his sister and her husband.

Years later, George asked Diane and her husband if they would move onto the family property, and told them he would give them one-third of that property. Diane and her husband moved to the western portion of George's property soon afterward, built a house there, and improved the surrounding area.

---

[2] Duane also argues that the trial court erred by denying his motion for a continuance when he was too ill to attend trial and denying his motion for reconsideration after trial. Because we reverse on other grounds, we do not address these issues.

George also invited Deborah and her husband to move onto the property, and represented that he would give them one-third of the total property. In 1988, Deborah and her husband moved to the property and built a house at 2409 Mt. Pleasant Road, just north of George's house in the middle portion of the property. No testimony established that George promised to give Deborah any specific portion of the property before she moved to the property in 1988. All the witnesses agreed only that George had promised to divide the property equally among the three children.

Duane lived in a house north of Deborah's at 2407 Mt. Pleasant Road, in the center-north of the property. There were no houses on the eastern portion of the property.

George and June at some point each executed wills devising their property to the surviving spouse at death, then distributing it equally among the three children once the second spouse passed. However, the wills did not describe how the property was to be divided or devise any particular portions to each child.

At some time before 2005, George hired a surveyor to survey the property and create roughly three equal parcels, apparently for the purpose of determining which child would receive which part of the property. The surveyor prepared a diagram of the property, which George used to designate the portions he planned to give to his children. George designated the western portion for Diane, the central portion (including George's house at 2403 Mt. Pleasant Road, but not including Duane's house at 2407 Mt. Pleasant Road) for Deborah, and the eastern portion and the property immediately surrounding Duane's house at 2407 Mt. Pleasant Road for Duane.

June died in 2005, and George subsequently became ill. Duane began to take a very active role in George's care, and some animosity developed among Duane, his sisters, family

friends, and neighbors. George changed his will to devise the entirety of the family property to Duane.

Diane brought a quiet title action against George to secure title to the western part of the property, which she and her husband had occupied and improved in reliance on George's promise to devise. The court quieted title in Diane's favor by imposing a constructive trust on the western third of the land. In the wake of this action, the bad blood between the family members intensified.

George died in September 2008. Duane began living in George's old house at 2403 Mt. Pleasant Road. Deborah moved away in 2011, but her children continued to live at her house at 2409 Mt. Pleasant Road.

Pursuant to George's second will, Duane was to receive title to George's remaining property – the original land minus the western portion deeded to Diane after her quiet title action. In January 2009, Deborah brought a quiet title action against George's estate and Duane, arguing that she was entitled to the central portion of the property outlined by the surveyor, including her house at 2409 Mt. Pleasant Road and George's house at 2403 Mt. Pleasant Road.

On the eve of trial, Duane informed his attorney that he had a severe hernia and would not be able to attend trial because he required bed rest until a scheduled surgery. On the morning of trial, Duane's attorney moved to continue the trial, offering her own affidavit and oral argument briefly describing the situation. The trial court denied the motion, but allowed Duane to listen in and testify telephonically. However, Duane's attorney was unable to reach him by telephone before trial started or over the lunch break to inform him of the arrangement.

46321-1-II

Apparently, Duane's wife had turned down the volume of the ringer on their home telephone in order to allow Duane to sleep.

The trial court proceeded with the trial on March 18, and heard testimony from several witnesses called by Deborah. The trial court also considered as an exhibit the diagram the surveyor prepared showing what portions of the property would be allocated to Diane, Deborah, and Duane respectively. Duane called no witnesses.

On April 7, the trial court issued findings of fact, conclusions of law, and an order imposing a constructive trust over the central portion of George's former property, including George's house, in favor of Deborah.

Duane appeals.

## ANALYSIS

A. CONSTRUCTIVE TRUST

Under certain circumstances, courts will intervene and impose a constructive trust to compel the legal owner of property to convey title to another person who justly deserves that property. *Baker v. Leonard*, 120 Wn.2d 538, 547, 843 P.2d 1050 (1993). " 'A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.' " *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 773, 275 P.3d 339 (2012) (quoting *Baker*, 120 Wn.2d at 547-48). Unjust enrichment occurs when a person retains property that in justice and equity belongs to another. *Wright*, 167 Wn. App. at 773. Constructive trusts arising in equity can be imposed only when supported by clear, cogent, and convincing evidence. *Baker*, 120 Wn.2d at 547.

5

Courts often will impose a constructive trust in cases involving fraud, bad faith, or other wrongful conduct. *See id.* When there is no evidence of fraud or wrongdoing, a constructive trust can be imposed if an equitable base is established through evidence of the decedent's intent that the legal title holder was not the intended beneficiary. *Id.* at 548. Specifically, constructive trusts can be established by evidence of an oral agreement. *Wright*, 167 Wn. App. at 774.

### B.   SUFFICIENCY OF EVIDENCE

Duane argues that there was insufficient evidence to support the trial court's findings of fact that George's promise to give Deborah the property specifically identified in the surveyor's diagram induced her to move onto the family property. We agree.

#### 1.   Standard of Review

We review a trial court's findings of fact after a bench trial to determine whether they are supported by substantial evidence. *Kitsap County v. Kitsap Rifle and Revolver Club*, 184 Wn. App. 252, 256, 337 P.3d 328 (2014), *review denied*, ___ P.3d ___ (2015). Substantial evidence is the amount of evidence sufficient to convince a rational, fair-minded person that a premise is true. *Id.*

However, as noted above, the factual basis for imposing a constructive trust must be established by clear, cogent, and convincing evidence. *Wright*, 167 Wn. App. at 774. Therefore, to qualify as substantial evidence in this case the evidence must show that the ultimate fact in issue is "highly probable." *Id.*

#### 2.   Disputed Findings of Fact

The trial court's imposition of a constructive trust was based on four key findings of fact:

2. George Lund, Jr. and June Lund promised 11.2 acres, more or less, to Deborah Kellogg. Said property encompassed the residence of George Lund, Jr., prior to his death, located at 2403 Mt. Pleasant Road and bare land located at 2409 Mt. Pleasant Road on which Deborah Kellogg had resided in as her own residence. Currently, 2403 Mt. Pleasant Road is inhabited by Duane Lund or a third party with his permission.

3. Exhibit 1 admitted at the March 18, 2014 trial of this matter accurately depicts the real property that was promised to Deborah Kellogg.

. . .

8. In reasonable, justifiable reliance upon her parents' promise, Deborah Kellogg and her former husband, Jeff DeSpain, moved to the property located at 2409 Mt. Pleasant Road in or about 1988.

9. In reasonable, justifiable reliance upon her parents' promise, Deborah Kellogg and her former husband, Jeff DeSpain, utilized the property located at 2403 Mt. Pleasant Road for recreation, including riding horses and additional pasture. In order to recreate on the property, Deborah Kellogg cleared brush and developed trails over a several year period.

Clerk's Papers (CP) at 184-85. Findings of fact 8 and 9 do not expressly identify the promise to which they refer, but the only promise mentioned in the previous findings is the one described in findings of fact 2 and 3.

Exhibit 1 was a roughly sketched diagram of the Lund property on which two witnesses highlighted the boundaries of the portions promised to Deborah and Diane. Finding 3 refers to a portion Deborah's ex-husband, Jeff DeSpain, highlighted during his testimony, showing the boundaries of the portion promised to Deborah. Taken together, findings 2 and 3 state that George and June promised Deborah the central third of the Lund property, including their house at 2403 Mt. Pleasant Road.

Duane acknowledges that the evidence supports findings of fact 2 and 3. However, he argues that these findings do not support a conclusion that George's promise occurred *before*

7

Deborah moved onto the property, which is the basis for the trial court's imposition of a constructive trust. We agree. These findings do not purport to address the timing of the promise.

However, findings of fact 8 and 9 do expressly state that Deborah moved onto the family property and utilized the property located at 2403 Mt. Pleasant Road *after* the promise identified in findings of fact 2 and 3. Duane argues that the evidence is undisputed that the promise to give Deborah the specific property identified in the surveyor's diagram occurred long after Deborah moved onto the property. Again, we agree.

Deborah and her husband testified that they moved onto the family property in 1988. Further, Deborah's husband testified that George hired the surveyor a few years before 2005. There is no evidence in the record that George promised Deborah the specific property identified in findings of fact 2 and 3 before 1988. In fact, all the testimony established that at least before the surveyor's diagram was prepared, George's promise was a general one – to give each child an unspecified one-third of the property.

We hold that findings of fact 8 and 9 are not supported by substantial evidence. Therefore, the trial court erred in making those findings.

3. Failure to Assign Error

Duane assigned error to finding of fact 9, but inexplicably failed to assign error on appeal to finding of fact 8. Under RAP 10.3(g), an appellant must include a separate assignment of error for each finding of fact he contends was improperly made, with reference to the finding by number. We typically do not review a claimed error not included in an assignment of error. RAP 10.3(g); *CalPortland Co. v. LevelOne Concrete, LLC*, 180 Wn. App. 379, 392, 321 P.3d 1261 (2014). Nevertheless, in the exercise of our discretion we will address findings of fact not

included in specific assignments of error where the nature of the challenge is apparent from the content of the opening brief. *Harris v. Urell*, 133 Wn. App. 130, 137-38, 135 P.3d 530 (2006).

Here, in discussing findings of fact 2, 3, and 9 – the findings to which he did assign error – Duane argued without mentioning finding of fact 8 that the facts stated in that finding were erroneous:

> The error that defendant does assign to these two findings [findings of fact 2 and 3] is that no evidence supports either an implicit or an explicit conclusion that George Lund made such a promise as an inducement to get Deborah and her then husband to move onto the property and build their home. Rather, the evidence from each of the witnesses was clear that the only promise George Lund made to Deborah and her husband building on the property and moving into that home was to eventually devise one-third of the property to Deborah.

Br. of Appellant at 22-23.

> Thus, to the extent findings two and three can be interpreted to hold that George Lund promised Deborah his home at 2403 Mt. Pleasant prior to Deborah's move to the property that interpretation is unsupported by substantial evidence.
> . . .
>
> [T]here is no evidence that George Lund or his wife ever made a promise to give their home at 2403 Mt. Pleasant to Deborah until some time well after she had built a home on the property and moved into it. Thus, to the extent that this finding [finding of fact 9] can be interpreted to hold that George and his wife promised their home to Deborah as an inducement to get her to move to the property and build a home such an interpretation is not supported by substantial evidence.

Br. of Appellant at 23.

We will disregard a violation of RAP 10.3(g) only in exceptional circumstances. *See Harris*, 133 Wn. App. at 137. Such circumstances exist here for several reasons. First, Duane's opening brief directly challenged the factual finding made in finding of fact 8. Second, Deborah did not oppose Duane's argument on the ground that he had failed to assign error to finding of fact 8. Third, there is absolutely no evidence in the record supporting finding of fact 8 – that

46321-1-II

Deborah moved onto the Lund property in 1988 in reliance on a promise George made some 15 years later.

Under the circumstances, justice would not be served by strict application of RAP 10.3(g). Accordingly, we hold that the trial court erred in making finding of fact 8 even though Duane did not assign error to that finding.

C.    CONCLUSIONS OF LAW

Duane argues that because there was insufficient evidence that George promised to give the specifically identified property to Deborah, the trial court erred in imposing a constructive trust on that property. We agree.

We review a trial court's conclusions of law after a bench trial to determine if they are supported by its findings of fact. *Kitsap Rifle*, 184 Wn. App. at 266. If a finding of fact is not supported by substantial evidence, a conclusion of law based on that finding cannot stand.

Here, the trial court concluded that the property Deborah sought had been held in constructive trust for her. This conclusion was based on other conclusions – which actually were mixed findings of fact and conclusions of law – that George promised the property to Deborah to induce her to move onto the family property:

> 5. The Lunds' promise to devise the real property to Deborah Kellogg was supported by valuable consideration and had been clearly intended by the decedents.
>
> 6. The Lunds had agreed to will or leave the real property to Deborah Kellogg.
>
> 7. The services contemplated as consideration for the agreement to will or leave the real property to Deborah Kellogg, including moving her family onto the property and developing such, was actually performed by Deborah Kellogg.

10

8. Deborah Kellogg moved her family to the real property and developed such in reliance upon the Lunds' agreement to devise or leave the real property to her.

9. The Lunds should have reasonably expected their promise to leave the real property to Deborah Kellogg to induce action on the part of Deborah Kellogg.

10. The Lunds' promise induced action by Deborah Kellogg.

11. Deborah Kellogg justifiably relied upon the Lunds' promise to leave her the real property.

12. Injustice can only be avoided by enforcement of the Lunds' promise to give the real property to Deborah Kellogg.

CP at 186.

However, all these conclusions depend on the finding of fact that George promised to give Deborah the property specifically identified in the surveyor's diagram *before* she moved onto the property and developed the property. As discussed above, there simply is no evidence in the record supporting such a finding. Deborah moved onto the property in 1988, and the surveyor's diagram was not prepared until the early 2000s. As a result, these conclusions of law are not supported by the trial court's findings of fact. Accordingly, we hold that the trial court erred in entering these conclusions of law.

D. PROCEEDINGS ON REMAND

The evidence in the record does support a finding that George's promise before 1988 to give Deborah an unspecified one-third of the property induced Deborah to move onto the property. This evidence would support a legal conclusion that Deborah is entitled to a constructive trust on an unspecified one-third of the property. However, the trial court did not make such a finding or conclusion. Accordingly, we remand to the trial court to address this issue.

46321-1-II

We reverse and remand for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

IZE, J.

SUTTON, J.