[No. 16776-6-I. Division One. August 3, 1987.]

ELENE T. MORSE, *as Personal Representative and Guardian, Respondent,* v. MYRTLE WILLIAMS, *Appellant.*

*James S. Sorrels,* for appellant.

*Daniel Unti* and *Carney, Stephenson, Badley, Smith, Mueller & Spellman,* for respondent.

ENNIS, J.*—

FACTS

Appellant Myrtle Williams appeals from a judgment denying her claim for moneys contained in joint bank accounts with right of survivorship. We affirm.

In 1966, Marvin Tucker and Altha Tucker, husband and wife, executed a statutory community property agreement. The agreement provided that all *community* property would, upon the death of either spouse, pass to the surviving spouse.

The Tuckers decided to separate in early 1973. In February of that year, the Tuckers simultaneously executed a joint and mutual will and a separation agreement entitled Division of Community Property. The separation contract, which was executed as a deed, stated that

> each of the parties shall execute wills, pursuant to which the surviving party shall receive *all property* to be used by said party during his or her lifetime, and at his or her death to be given one–half to Patricia Griswold, one–half to Bruce A. Hedman.

(Italics ours.)

The joint and mutual will, which was not executed as a deed, carried out the above quoted agreement, stating:

> We have previously entered into a written agreement, which provides that upon the death of either of us, title to all property, community or separate, shall immediately vest in fee simple in the survivor. It is not our intention by executing this Will to revoke said agreement, but rather to *supplement* said agreement if it be necessary, *it being our intention that all property* shall pass without probate to either one of us who shall survive the other, but that the ultimate disposition of our estate, after both of us are deceased, shall be in accordance with the terms and provisions of this Will.

(Italics ours.)

---

*This appeal was heard by a Court of Appeals Judge together with a Superior Court Judge and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

Approximately 1 month after the separation agreement was signed, Marvin Tucker moved out of the family home and moved into an apartment. Shortly thereafter, he began seeing appellant Myrtle Williams. After suffering a stroke in July 1973, Marvin decided to live with appellant in her home.

In 1973, Marvin opened a bank account in his name only. However, appellant's name was later added to that account, and the same was changed to a joint account with right of survivorship in appellant.

On January 28, 1983, Marvin opened a second joint account with right of survivorship in appellant. On February 21, 1984, Marvin executed an affidavit stating that he owned the moneys in this second account and that he intended the moneys in said account to pass to Myrtle Williams provided she survive him.

On April 16, 1984, Marvin Tucker suffered a severe second stroke and never recovered. Three weeks later, appellant petitioned the court to be appointed the guardian of Marvin Tucker, and filed a sworn statement that Marvin Tucker was possessed of two bank accounts containing approximately $50,000.

On May 21, 1984, appellant was appointed special limited guardian of the person and estate of Marvin Tucker. One week later, Marvin Tucker died. The inventory filed in Marvin's guardianship estate after his death indicates he died possessed only of the moneys in the two bank accounts totaling $53,245. However, appellant thereafter refused to transfer said moneys to Altha Tucker, the surviving spouse under the terms of the three contractual agreements entered into between Altha and Marvin.

On August 15, 1984, Elene Morse, sister of Altha Tucker, was appointed personal representative of the estate of Marvin Tucker as provided for in the joint will of February 1973. That same day, the Tuckers' will was admitted to probate.

In September 1984, Elene Morse filed the present action to recover the bank account funds held by appellant. The

trial court held that the Tuckers' 1966 community property agreement, the 1973 separation agreement, and the joint will together precluded Marvin Tucker from directing an at–death transfer of his property to anyone other than his wife. The court also found and concluded that Marvin Tucker did not intend to give any present interest in the accounts to appellant. Consequently, the court ruled that the survivorship accounts were attempts at testamentary dispositions, and held that the survivorship clauses in the joint account contracts were of no force and effect in light of the Tuckers' prior agreements. Appellant now seeks reversal of the trial court's decision regarding the 1983 joint tenancy account with right of survivorship.

### PRIOR AGREEMENTS/SEPARATE PROPERTY

Appellant first contends that the Tuckers' previous agreements do not create a right of survivorship in either spouse's *separate* property, and therefore the separate property held by Marvin Tucker in the 1983 joint account was not subject to the prior agreements or the mutual will. Specifically, appellant argues that the Tuckers' 1966 community property agreement, which only directed the disposition of *community* property upon the death of either spouse, could not be altered or amended by the Tuckers except by way of a will or agreement acknowledged as a deed. RCW 26.16.120.[1] Since the Tuckers' mutual will was not acknowledged as a deed, appellant argues that the reference to distribution of *separate* property in the will is of no force and effect under RCW 26.16.120. This argument is

---

[1]RCW 26.16.120 states, in pertinent part:

"Agreements as to status. Nothing contained in any of the provisions of this chapter or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either. But such agreement may be made at any time by the husband and wife by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged and certified in the same manner as deeds to real estate are required to be, under the laws of the state, and the same may at any time thereafter be altered or amended in the same manner: . . ."

without merit.

Appellant's argument overlooks the fact that the Tuckers also executed, in the manner required for deeds, a separation contract which stated:

It is further agreed that each of these parties shall execute wills, pursuant to which the surviving party shall receive *all property* to be used by said party during his or her lifetime, . . .

This language evidences and memorializes the Tuckers' agreement to extend their earlier community property agreement to cover *all property,* separate or community. Appellant's only challenge to this language is her statement that the 1973 separation contract "does not purport to pass title to any property upon the death of either husband or wife." Though this statement is literally correct, the fact remains that the Tuckers agreed in the 1973 agreement to execute wills passing title to all of their property upon the death of either spouse. In the absence of any argument regarding the legal effectiveness (under RCW 26.16.120) of the agreement to execute a mutual will supplementing the Tuckers' community property agreement, we will not disturb the trial court's findings and conclusions.

TESTAMENTARY DISPOSITION/RCW 30.22

Appellant next argues that the 1983 joint account with right of survivorship does not violate the terms of the Tuckers' previous agreements because the survivorship rights under the accounts are not testamentary under RCW 30.22.100 (Financial Institution Individual Account Deposit Act). Appellant relies primarily on RCW 30.22.100(5), which states in pertinent part:

Any transfers to surviving depositors or to trust or P.O.D. account beneficiaries pursuant to the terms of this section are declared to be effective by reason of the provisions of the account contracts involved and this chapter and *are not to be considered as testamentary dispositions.* The rights of survivorship and of trust and P.O.D. account beneficiaries arise from the express terms of the

contract of deposit and cannot, under any circumstances, be changed by the will of a depositor.

(Italics ours.)

Appellant contends the language relating to the nontestamentary nature of survivorship accounts evidences the Legislature's intent to declare all joint accounts with right of survivorship to be nontestamentary in nature or effect. We disagree.

■ Though we have found no relevant legislative history in Washington, the interpretation of identical statutory language in at least one jurisdiction and the comments following a similar provision in the Uniform Probate Code support a conclusion that the purpose of the statutory language at issue is to except survivorship accounts from the requirements for valid wills. *In re Estate of Frandson*, 356 N.W.2d 125 (N.D. 1984); Uniform Probate Code § 6–106 comment (1982). ("The purpose of classifying the transactions . . . as nontestamentary is to bolster the explicit statement that their validity as effective modes of transfers at death is not to be determined by the requirements for wills."). The authorities cited indicate that the purpose of the statutory language "not to be considered as testamentary dispositions" is to preclude any challenges to the validity of survivorship accounts on the basis of their failure to comply with the requirements for execution of a will. We find these authorities persuasive, and hold that the Legislature did not intend to characterize all joint accounts with right of survivorship as nontestamentary in nature. Rather, the Legislature merely excepted such accounts from the normal requirements for the execution of a valid will.

■ The question remains, however, whether the joint account at issue was a testamentary device or whether it gave appellant a present interest in the account funds. This question is answered in part by RCW 30.22.090, which states:

Ownership of funds during lifetime of depositor. Subject to community property rights, during the lifetime of a depositor, or the joint lifetimes of depositors:

(1) Funds on deposit in a single account belong to the depositor.

(2) Funds on deposit in a joint account without right of survivorship and *in a joint account with right of survivorship belong to the depositors in proportion to the net funds owned by each depositor on deposit in the account, unless the contract of deposit provides otherwise or there is clear and convincing evidence of a contrary intent at the time the account was created.*

(3) Funds on deposit in a trust or P.O.D. account belong to the depositor and not to the trust or P.O.D. account beneficiary or beneficiaries; if two or more depositors are named on the trust or P.O.D. account, their rights of ownership to the funds on deposit in the account are governed by subsection (2) of this section.

(4) Ownership of funds on deposit in an agency account shall be determined in accordance with subsections (1), (2), and (3) of this section depending upon whether the principal is a depositor on a single account, joint account, joint account with right of survivorship, or trust or P.O.D. account.

(Italics ours.) The meaning of the language in subsection (2) above is made clear by the following comment following a parallel section of the Uniform Probate Code:

This section reflects the assumption that a person who deposits funds in a multiple–party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he *usually intends no present change* of beneficial ownership. The assumption may be disproved by proof that a gift was intended. . . .

. . . The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor *receives for the first time at the death of the owner.* That is to say, *the account operates as a valid disposition at death rather than as a present joint tenancy.*

(Italics ours.) Uniform Probate Code § 6–103 comment. This comment supports a conclusion that RCW 30.22.090 and similar statutes in other jurisdictions create a pre-

sumption, rebuttable by clear and convincing evidence, that joint accounts with right of survivorship transfer interests at death only; *i.e.*, they do not give a nondepositing party any present interest in the account funds. *See Browning & Herdrich Oil Co. v. Hall*, 489 N.E.2d 988, 990–91 (Ind. Ct. App. 1986); *Hanover Bank v. United Penn Bank*, 326 Pa. Super. 593, 474 A.2d 1137, 1140 (1984); *Hefner v. Estate of Ingvoldson*, 346 N.W.2d 204, 207 (Minn. Ct. App. 1984); *Stevenson v. Stevenson*, 132 Ariz. 44, 643 P.2d 1014, 1016 (1982); *Rogers v. Rogers*, 437 N.E.2d 92, 96–97 (Ind. Ct. App. 1982). We find the above quoted comment persuasive, and hold that RCW 30.22.090 creates a rebuttable presumption that funds in a joint account with right of survivorship are owned by the depositors in proportion to the amount deposited by each. Therefore, we must determine whether the presumption was rebutted in the present case either by the contract of deposit, or by clear and convincing evidence of a contrary intent.

The contract of deposit (or signature card) at issue here offered three optional accounts: (1) a "single name account"; (2) a "*two or more name account joint tenancy with right of survivorship*" (italics ours); and (3) a "two or more name account not joint tenancy with right of survivorship". The signature card had an "x" in the box next to the second type of account. Thus, the account purports to be a "joint tenancy" with right of survivorship. The use of the words "joint tenancy" in the account card might, under other circumstances, conclusively establish a joint tenancy under the statute.[2] However, we need not decide that question in this case because evidence admitted without objection below and the unchallenged findings of the trial court establish that Marvin Tucker did not intend to create a

---

[2]It should be noted that the statute is not clear as to whether a signature card is a "contract of deposit" under RCW 30.22.090(2). The question carries some significance since a signature card is usually prepared by and for the bank and does not necessarily express the terms of any agreement between the depositors. *In re Matt*, 75 Wn.2d 123, 132, 449 P.2d 413 (1969). *Accord, Greenwood v. Beeson*, 253 Or. 318, 454 P.2d 633, 635–36 (1969).

true joint tenancy in the account at issue.

Though appellant may not have realized it at the time, she in effect argued at trial under the portion of the statute requiring "clear and convincing evidence" of an intent contrary to the statutory presumption. In so doing, she opened an inquiry into matters outside the signature card, which inquiry resulted in findings contrary to her position.[3] The trial court found (1) that all moneys deposited in the accounts at issue were deposited by Marvin Tucker; (2) that Marvin Tucker did not intend to transfer a present interest or make an inter vivos gift to appellant; and (3) that Marvin Tucker only intended to create an at–death transfer of the accounts to appellant. These unchallenged findings establish an intent on the part of Marvin Tucker to transfer his separate property to appellant by way of a testamentary disposition, and thus they support, rather than rebut, the presumption in RCW 30.22.090. Since a testamentary disposition of Marvin Tucker's property violates the Tuckers' prior agreements and their mutual will, the trial court properly set the attempted transfer aside. *See Newell v. Ayers,* 23 Wn. App. 767, 598 P.2d 3 (1979); *Lyon v. Lyon,* 100 Wn.2d 409, 670 P.2d 272 (1983).

Affirmed.

SCHOLFIELD, C.J., and BRUCKER, J. Pro Tem., concur.

---

[3]We note that appellant claims the trial court in fact found a joint tenancy. However, a careful reading of the court's findings shows that the trial court did not find a *present* joint tenancy in the account at issue. In fact, the court found that Marvin Tucker's sole purpose in creating the 1983 joint account was to transfer the moneys therein to appellant upon his death.