91 P.3d 96 (2004)
121 Wash.App. 653
In the Matter of the ESTATE OF Rudolph KRAPPES, Deceased,
Edwin R. Garten, Personal Representative of the Krappes Estate, Appellant/Cross-Respondent,
v.
Sondra Lee Daley, Respondent/Cross-Appellant.
No. 51621-3-I.
Court of Appeals of Washington, Division 1.
March 22, 2004.
Publication Ordered April 29, 2004.
*97 Richard Paul Lentini, Attorney at Law, Seattle, WA, for Appellant.
Kevin M. Winters, Hawkes Law Firm PS, Seattle, WA, for Respondent/Cross-Appellant.
SCHINDLER, J.
Edwina Garten, the personal representative of the Estate of Rudolph Krappes (the Estate) appeals the trial court's decision to distribute funds owned by Rudolph Krappes to his niece Sondra Daley from their joint checking account with right of survivorship. The Estate contends that under the banking statute, RCW 30.22, Estate of Lennon v. Lennon[1] and Estate of Tosh[2] the Estate owns the joint account funds because Daley withdrew them before Krappes *98 died. We agree. The trial court erred when it concluded that the joint account established by Krappes created an ownership interest in Daley and was an inter-vivos gift. But because the undisputed evidence establishes that Krappes intended Daley to have the joint account funds after he died, we affirm the trial court's decision to impose a constructive trust and distribute the joint account funds to her. The Estate also challenges the trial court's decision to allow testimony under the deadman statute and several evidentiary rulings. The trial court's decision to admit Krappes' unsigned will was harmless error and we affirm the trial court's other evidentiary decisions.

Facts
On June 4, 1986 Rudolph Krappes opened a joint bank account with right of survivorship at the Burien branch of First Interstate Bank. The account listed Krappes' niece Sondra Daley, who lives in Nebraska, as a depositor. Krappes deposited all the funds in the Krappes-Daley account, and used the money to pay his living expenses. Daley made no deposits of her own funds into the account.[3]
On April 19, 1991, Krappes executed a Last Will and Testament. In the will, he named another niece, Edwina Garten, as personal representative and sole beneficiary of the estate. The primary asset identified in the will is Krappes' house.[4]
In June 1994, Krappes purchased a certificate of deposit "in trust for" Daley. In December 1998, Krappes purchased an annuity and designated Daley as the beneficiary.
In 2001 Krappes' spouse Dorothy was diagnosed with non-Hodgkin's lymphoma.[5] Beginning in March 2001, Dorothy's niece Wanda Koumaros and Wanda's sister Rita began helping the Krappes on a daily basis with errands, medical appointments, and other daily needs. Koumaros regularly spent the entire day taking care of the Krappes. In June, Krappes was diagnosed with cancer of the jaw and surgery was scheduled for early July.[6] On June 12 Krappes withdrew the funds from the certificate of deposit and deposited them in the Krappes-Daley joint account.
On June 22, Krappes was admitted to the hospital for treatment of cancer of his lower jaw. Thereafter, he was in either the hospital or a residential rehabilitation facility, and never returned home.
When Krappes was hospitalized in June, Daley agreed to manage Krappes' financial affairs and was sent the checkbook for the Krappes-Daley joint account. Daley paid Krappes' bills from this account. One of Krappes' neighbors collected the mail and sent it to Daley so that she could pay his bills and manage his financial affairs.
In conversations with Koumaros, Daley learned that Krappes had signed several checks in blank and given them to Koumaros and her sister to pay for any necessities. Koumaros also told Daley that a box of checks for the Krappes-Daley account was missing and could not be located. Daley was concerned about the blank checks signed by Krappes, the missing box of checks, and because she had not met and did not know Koumaros or her sister. Daley spoke to Garten's brother Frank in late June or early July. She told Frank she was worried about the integrity and safety of the funds in the Krappes-Daley account and that she planned to move the money to a different account. Frank agreed that it was a good idea to move the money out of the account to protect it. Frank told Garten about his conversations and Daley's plan. On July 1 Daley withdrew $95,000 from the joint account and transferred it to an account she had with her mother. Daley left $21,000 in the Krappes-Daley account so that Koumaros and her sister could use the signed blank checks to pay bills if necessary.
On July 5, Krappes told Koumaros he wanted to consolidate all his money in the Krappes-Daley joint account because if anything *99 happened to him, he wanted Daley to get everything.
After Krappes' surgery in early July, Krappes asked Koumaros several times to help him change his will make Daley the sole beneficiary and to change his attorney in fact from Garten to Daley.
On July 26 Dorothy Krappes died.
On August 6, Daley came to Seattle to visit Krappes and meet Koumaros and her sister Rita. On August 7, after meeting with Koumaros and a notary public, Krappes executed a new power of attorney designating Daley as his attorney in fact. On August 8, Daley, as Krappes' attorney in fact, withdrew $10,000 from Krappes' and Dorothy's joint account and gave the money to Koumaros to repay her for her past and expected future caretaking. During her visit Daley also arranged with Koumaros and her sister to take over all bill paying and financial management for Krappes and looked again for the missing box of checks. Daley returned to Nebraska on August 9.
On August 12, Daley withdrew $18,000 from the Krappes-Daley joint account and deposited these funds in her own account because Koumaros and her sister would no longer write checks on the Krappes-Daley account and the box of checks was still missing. On August 13, Daley withdrew $95,000 from the account with her mother and purchased a cashier's check in that amount.[7]
On August 24, Krappes died unexpectedly of a heart attack.
On September 13, Daley deposited the $95,000 cashier's check in a bank account in her name only. From July 1 to August 16 Daley withdrew $113,900 from the Krappes-Daley joint account.[8]
Krappes' existing will was admitted to probate, and on September 19, 2001, Garten was named as his personal representative. Garten, as the personal representative of the Estate, asked Daley to return the funds she had removed from the Krappes-Daley joint account and provide the bank records. Daley repaid the money she used to pay Koumaros from Krappes' and Dorothy's account but refused to return the money she withdrew from the Krappes-Daley joint account because Krappes intended that money go to her on his death. The Estate filed an action against Daley, claiming it was legally entitled to the funds from the Krappes-Daley joint account and demanding return of the $113,900. The case was tried to the court on August 26 and 27, 2002.
The trial court ruled that when Krappes created the Krappes-Daley joint account, he had made an intervivos gift of the money in the joint account to Daley, and that Daley was entitled to the money. The court also found that Daley did not intend or attempt to convert the money to her own use, that she was the intended beneficiary of the funds in the joint account, and that if Daley did not receive the funds the Estate would be unjustly enriched. The court imposed a constructive trust on the funds from the joint account and awarded them to Daley. The Estate appeals.

Legal Title to the Joint Account Funds
Daley contends, and the trial court found, that the Estate did not have standing to claim ownership of the funds. But the personal representative of an estate has statutory authority to recover estate property.[9] The Estate has standing to litigate the question of legal title to the funds in an effort to recover them for the estate.[10]
The Estate claims Daley did not have legal ownership of the funds in the Krappes-Daley joint account and did not obtain legal ownership because the funds were not in the account when he died.[11] We agree.
*100 Legal title to the funds in the Krappes-Daley joint account with right of survivorship is a question of law, and this court reviews conclusions of law de novo.[12]
Under RCW 30.22.090(2),
Funds on deposit in ... a joint account with right of survivorship belong to the depositors in proportion to the net funds owned by each depositor on deposit in the account, unless the contract of deposit provides otherwise or there is clear and convincing evidence of a contrary intent at the time the account was created.
The Financial Institution Individual Account Deposit Act defines "joint account with right of survivorship" as "an account in the name of two or more depositors and which provides that the funds of a deceased depositor become the property of one or more of the surviving depositors."[13] The Act defines "depositor" as "an individual who owns the funds."[14] During the lifetime of a depositor, funds in a joint account with right of survivorship "belong to the depositors in proportion to the net funds owned by each depositor on deposit in the account, unless the contract of deposit provides otherwise or there is clear and convincing evidence of a contrary intent at the time the account was created."[15] Under RCW 30.22.100, the funds of a deceased depositor in a joint account with right of survivorship become the property of the surviving depositor(s). These statutes create a rebuttable presumption that joint accounts with right of survivorship do not give a nondepositing party any present interest in the account funds.[16]
The two cases cited by the Estate, Estate of Lennon v. Lennon,[17] and Estate of Tosh,[18] are controlling on the question of legal ownership of the joint account funds in the Krappes-Daley account.
In Lennon, a decedent opened a joint account with right of survivorship. She and her stepson were named the depositors on the account. The decedent was the sole depositor of funds in the account. Two days before her death, her stepson wrote checks from the account to himself and his two sisters as Christmas gifts. The court concluded that, because there was no evidence that the decedent intended to convey a present ownership interest to the stepson, he had no authority to make gifts from the account. If the stepson had not removed the money from the joint account, the money would have gone to him as the sole remaining signatory on the joint account with right of survivorship. But the stepson did not own the money before the decedent's death, and absent any evidence that he was authorized to write the checks, the money belonged to the estate.
In Tosh, decedent Tosh added longtime friend Christianson to his checking account as a joint tenant with right of survivorship. Hours before Tosh's death, Christianson withdrew money from the account. After Tosh died, Christianson gave the money to Tosh's children. Christianson later claimed that she was entitled to the $137,000 as a joint tenant. This court rejected Christianson's claim, stating that
[f]unds on deposit in a joint account belong to each depositor in proportion to their ownership of the funds. When one depositor dies, the funds remaining on deposit in a joint account with right of survivorship become the property of the surviving depositor(s).[19]
The court further stated "although [Christianson] had a right as joint tenant to withdraw the funds, they did not belong to her. And because the funds were not on deposit when Tosh died, ownership of those funds did not pass to her. The funds never belonged *101 to Christianson, and no theory can support her desire for their return."[20]
RCW 30.22.090 and 30.22.100 and Lennon and Tosh make clear that when the funds owned by the joint tenant are withdrawn before the decedent dies, the right of survivorship is defeated. The Estate does not dispute that if the funds had remained in the joint account, they would have belonged to Daley as the surviving joint tenant by the terms of the account. But when Daley withdrew the money from the joint account, she also withdrew them from the operation of the survivorship terms of the account. When Krappes died the money was not on deposit in the account; it was still owned by Krappes, and the Estate legally owned the funds.
Daley contends, and the trial court found, that Krappes made an inter vivos gift of the joint account funds to her by creating the joint account and signing the account card making her a depositor. But "a signature card is usually prepared by and for the bank and does not necessarily express the terms of any agreement between the depositors."[21] It is undisputed that Krappes made all deposits into the account and used the money as his own during his lifetime. Daley testified that she considered the funds to belong to Krappes and did not appropriate them for her own use. We conclude that by establishing the joint account with Daley, Krappes did not make an inter vivos gift of the funds to her.
Daley further argues that RCW 11.94.050, the anti-ademption statute, operates to prevent the funds in the Krappes-Daley joint account from being distributed to anyone other than Daley. RCW 11.94.050 provides that a decedent's "attorney in fact or agent... shall not have the power, unless specifically provided ... [t]o make, amend, alter, or revoke any of the principal's ... designation of persons as joint tenants with right of survivorship ... [or] to make transfers of property to any trust." The trial court concluded RCW 11.94.050 applied and that Daley's withdrawal of money from the joint account did not defeat Krappes' intent that Daley receive the funds. We disagree.
RCW 11.94.050 does not invalidate a joint tenant's right to withdraw funds from a joint account. Daley withdrew the funds as a joint tenant, not as the attorney in fact. Daley also did not change the joint tenant with right of survivorship designation on the account or transfer the funds to a trust as provided by RCW 11.94.050. The anti-ademption statute does not apply in this case and the trial court erred in concluding otherwise.

Equitable Trust
The Estate relies on language in this court's decision in Tosh to argue that because it legally owns the funds from the Krappes-Daley joint account, the trial court cannot impose a constructive trust and award the funds to Daley. In Tosh we said "... because the funds were not on deposit when Tosh died, ownership of those funds did not pass to [Christianson]. The funds never belonged to Christianson, and no theory can support her desire for their return."[22] But in Tosh, the only issue was legal title to funds in a joint account. Here, Daley argued that the trial court should impose a constructive trust. This Court's Tosh decision does not preclude the trial court's consideration of this equitable theory.
The Estate argues the trial court erred by imposing a constructive trust on the funds Daley withdrew from the Krappes-Daley joint account, and challenges the findings of fact that support the trial court's decision.
"A constructive trust is an equitable remedy that arises `where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.'"[23] "Where for any *102 reason, the legal title to property is placed in one person under such circumstances as to make it inequitable for him to enjoy the beneficial interest, a trust will be implied in favor of the persons entitled thereto."[24] A trial court may impose a constructive trust where there is clear, cogent and convincing evidence supporting it.[25] Although trial courts often impose constructive trusts because of fraud, misrepresentation, bad faith or overreaching, these are not pre-requisites; "the courts have imposed constructive trusts when the evidence established the decedent's intent that the legal title holder was not the intended beneficiary."[26] We review the trial court's decision to impose a constructive trust to determine whether the findings of fact support the conclusion of law that such a trust was required.[27] The standard of proof is clear, cogent and convincing evidence,[28] and whether there was highly probable, substantial evidence to support the findings of fact.[29]
Here, the uncontested evidence shows that Daley did not appropriate the funds from the joint account for her own purposes and that Krappes intended the funds in the Krappes-Daley joint account to go to Daley upon his death. Krappes opened the joint account in his and Daley's names as joint tenants with right of survivorship. A portion of the funds had been in the certificate of deposit Krappes purchased "in trust for"[30] Daley. Krappes told Koumaros several times that Daley should manage the funds in the Krappes-Daley joint account because the money "was going to her anyway."[31] And Koumaros said Krappes told her that he intended Daley to have the money in the Krappes-Daley account when he died. Garten also testified that Krappes said he intended to give Daley a separate gift of money, and she had no reason to believe that Krappes had a contrary intent.
There was highly probable and substantial evidence to support the trial court's findings of fact, and the findings support the trial court's decision to impose a constructive trust. The trial court did not err in concluding that Daley was entitled to the funds from the joint account, that the Estate would be unjustly enriched if it received the funds, and that the funds should be distributed to Daley according to Krappes' undisputed intent.

Evidentiary Rulings
The trial court excluded testimony by Daley about Krappes' intent under the deadman statute but allowed Koumaros to testify about conversations and statements made by Krappes. The Estate claims the trial court erred in admitting Koumaros' testimony. The Estate argues that Koumaros is a party in interest because she might have to repay the $10,000 Daley gave her for taking care of Krappes.
The deadman statute, RCW 5.60.030, precludes testimony by a "party in interest" about "transactions" with or statements made by the deceased. RCW 5.60.030 provides:
[I]n an action ... where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, ... then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased....
The purpose of the deadman statute is to prevent interested parties from giving self-serving testimony regarding conversations or transactions with the decedent.[32]
*103 The Estate argues that Koumaros was a party in interest because she had received $10,000 from Daley and, if the Estate prevailed and Daley was unable to repay the $10,000, either Daley or the Estate would seek from Koumaros' repayment.
A witness is a party in interest if he or she stands to gain or lose from the judgment.[33] The test is whether the witness will either gain or lose by direct legal operation and effect of the judgment. A mere contingency that the witness might be subjected to an independent claim or action depending on the outcome of the action in which she is called as a witness is not a disqualifying interest.[34] We conclude the deadman statute does not apply, and the trial court did not err in admitting Koumaros' testimony.
The Estate contends the trial court erred in admitting the unsigned draft will, a letter from Koumaros, and notes taken by Koumaros. This court reviews these evidentiary rulings for an abuse of discretion.[35]
The Estate argues the unsigned will was irrelevant and contained hearsay. Daley argues the unsigned will was relevant to her unsuccessful claim that Krappes revoked his will by asking Koumaros on numerous occasions to obtain a new will for him to sign. Although Daley made this argument in her initial pleadings, she did not make it in subsequent pleadings or at trial. The unsigned will was not relevant to ownership or distribution of the Krappes-Daley joint account funds, and the trial court erred in admitting it. Because the will was not signed and Krappes never saw it, it does not show his intent. However, there is no evidence that admission of the unsigned will affected the outcome. We conclude the trial court abused its discretion, but the error was harmless.
The Estate contends the trial court erred in admitting a letter from Koumaros to Krappes and his wife and Koumaros' notes documenting her caretaking activities on their behalf. The Estate argues that both exhibits contained inadmissible hearsay and were irrelevant. The trial court admitted both exhibits during redirect examination.
"ER 801(d) provides that statements are not hearsay if the declarant testifies at trial, is subject to cross examination concerning the statement, and the statement is consistent with his or her testimony and offered to rebut a charge of recent fabrication or improper motive."[36] These exhibits were consistent with Koumaros' direct testimony and admitted during redirect to rebut the Estate's implication that she fabricated her testimony in order to keep the $10,000 Daley paid her. We conclude under ER 801(d) that the trial court did not abuse its discretion in admitting these exhibits.
The Estate claims the trial court erred in excluding Garten's testimony that Koumaros did not tell her that she had received $10,000 from Daley. Daley correctly argues this testimony on a collateral matter was irrelevant and inadmissible. It is collateral to the legal and equitable ownership of the Krappes-Daley joint account funds. The trial court did not abuse its discretion in excluding the testimony.

Conclusion
While the trial court's conclusion that Daley legally owned the funds either through an inter vivos gift or through operation of the survivorship terms of the account was erroneous, we affirm the trial court's imposition of a constructive trust for the funds in favor of Daley. We conclude the trial court abused its discretion in admitting the unsigned will, *104 but the error was harmless and affirm the trial court's other evidentiary rulings.[37]
COX, A.C.J., and APPELWICK, J., concur.
NOTES
[1] 108 Wash.App. 167, 29 P.3d 1258 (2001).
[2] 83 Wash.App. 158, 920 P.2d 1230 (1996).
[3] Krappes and his wife Dorothy had a separate joint account.
[4] A separate document names beneficiaries for Krappes' personal property.
[5] Dorothy underwent chemotherapy and was in and out of the hospital until she died that year.
[6] Krappes was 78 years old at the time.
[7] Daley withdrew the funds because she did not want to give the impression that her mother was involved in any way with them.
[8] Of these funds, none were spent before Krappes died, except $900 to visit Krappes in August.
[9] RCW 11.48.010; .020; .060; .070; .090.
[10] Lennon, 108 Wash.App. at 183-84, 29 P.3d 1258.
[11] Daley argues that the Estate failed to assign error to conclusions of law 6, 7, 8, or 9, precluding review. But the Estate correctly notes that RAP 10.3(g) does not require an appellant to assign error to conclusions of law; further, it is clear that assignments of error 32-35 should read "conclusion of law" rather than "finding of fact", and we will treat them as such.
[12] Tapper v. State Employment Security Dept., 122 Wash.2d 397, 402, 858 P.2d 494 (1993).
[13] RCW 30.22.040(8).
[14] RCW 30.22.040(11).
[15] RCW 30.22.090(2).
[16] Lennon, 108 Wash.App. at 182-83, 29 P.3d 1258 (citations omitted).
[17] 108 Wash.App. 167, 29 P.3d 1258.
[18] 83 Wash.App. 158, 920 P.2d 1230.
[19] Tosh, 83 Wash.App. at 166, 920 P.2d 1230 (citations omitted).
[20] Estate of Tosh, 83 Wash.App. at 166, 920 P.2d 1230.
[21] Fireman's Ins. v. Northwest Paving, 77 Wash.App. 474, 477, 891 P.2d 747 (1995).
[22] Tosh, 83 Wash.App. at 166, 920 P.2d 1230 (emphasis added).
[23] Baker v. Leonard, 120 Wash.2d 538, 547-48, 843 P.2d 1050 (1993).
[24] Scymanski v. Dufault, 80 Wash.2d 77, 88, 491 P.2d 1050 (1971).
[25] Baker, at 547, 843 P.2d 1050.
[26] Baker, at 548, 843 P.2d 1050.
[27] Willener v. Sweeting, 107 Wash.2d 388, 393, 730 P.2d 45 (1986).
[28] In re Marriage of Schweitzer, 132 Wash.2d 318, 329-30, 937 P.2d 1062 (1997).
[29] Schweitzer, 132 Wash.2d at 329, 937 P.2d 1062.
[30] CP at 148.
[31] RP (8/26/02) at 76.
[32] Thompson v. Henderson, 22 Wash.App. 373, 379-380, 591 P.2d 784 (1979).
[33] O'Steen v. Estate of Wineberg, 30 Wash.App. 923, 936, 640 P.2d 28 (1982).
[34] Adams Marine Serv., Inc. v. Fishel, 42 Wash.2d 555, 562-63, 257 P.2d 203 (1953).
[35] Sintra, Inc. v. City of Seattle, 131 Wash.2d 640, 662-63, 935 P.2d 555 (1997).
[36] State v. Osborn, 59 Wash.App. 1, 4, 795 P.2d 1174 (1990).
[37] We conclude the trial court did not abuse its discretion in awarding reasonable costs and attorneys' fees to Daley under RCW 11.46A.150. RCW 11.96A.150(1) provides that a trial court "may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party ... in such amount and in such manner as the court determines to be equitable."