230 P.3d 199 (2010)
Penny K. TAUFEN, Plaintiff,
v.
The ESTATE OF Maria K. KIRPES, and Rose M. Bick, Personal Representative of the Estate of Maria T. Kirpes, Deceased, Defendants.
Terry Yochum, Respondent,
v.
The Estate of Maria T. Kirpes and Rose M. Bick, Personal Representative of the Estate of Maria T. Kirpes, Deceased, Appellants.
No. 27799-2-III.
Court of Appeals of Washington, Division 3.
April 20, 2010.
*200 David Allan Gittins, Attorney at Law, Clarkston, WA, for Appellants.
Robert L. Brower, Thomas W. Callery, Jones Brower & Callery PLLC, Lewiston, ID, for Respondent.
SWEENEY, J.
¶ 1 A presumption attaches to a joint tenancy with right of survivorship account that the signatories to the account intended title to the proceeds to vest in the surviving signatory. But the presumption is rebuttable. Here, the trial court found that a bank employee, not the now deceased signatory, created the joint account with right of survivorship. And that finding will not support the trial court's conclusion that the decedent here intended to create a joint account with right of survivorship. We, therefore, reverse the judgment in favor of the surviving signatory and remand for entry of judgment in favor of the decedent's estate.

FACTS
¶ 2 Maria Kirpes was dying of cancer. Her estate included two Edward Jones investment accounts worth approximately $178,544.77 and $340,823.58, a house worth $138,000, and $56,219.26 on deposit in a checking account at Sterling Savings Bank in Clarkston, Washington. She hired attorney, Steve Rice, on January 16, 2006, to prepare her will. She told Mr. Rice she wanted to leave $25,000 each to two Catholic nuns and $25,000 to Holy Family Catholic Church in Clarkston. She also wanted to leave her house to her good friend and handyman, Terry Yochum.
¶ 3 Ms. Kirpes' checking account was a joint account with her former caretaker, Mary Carol Sauve. On January 18, she closed that account and transferred its balance to a new account. She told the banker, Judy Stapleton, that the new account would be a joint account with Terry Yochum. She made no mention of survivorship. But the trial court found that Ms. Stapleton unilaterally elected to add a right of survivorship to the account:
Maria T. Kirpes only instructed Judy Stapleton that she wanted to open up a joint account. At no time did Maria T. Kirpes tell Judy Stapleton that it was to be a joint account with right of survivorship. Judy Stapleton, on her own, elected to create a joint account with a right of survivorship and never discussed that designation with Maria T. Kirpes.
Clerk's Papers (CP) at 105 (unchallenged Finding of Fact (FF) 18). And Ms. Kirpes and Mr. Yochum signed an account card opening the account.
¶ 4 On January 20, Ms. Kirpes told Mr. Rice she had made no changes to her assets since their first meeting. She then signed a will that bequeathed her house to Mr. Yochum and his wife; 15 percent of her residuary *201 estate to the two nuns and Holy Family Catholic Church, divided equally; and 85 percent of her residuary estate to her late husband's cousins, Rose and Lynn Bick, divided equally. She named Rose Bick as her estate's personal representative.
¶ 5 On February 7, Ms. Kirpes met with her financial manager from Edward Jones, Christian Leer. She told Mr. Leer to close one of her investment accounts and issue her a check. He closed the account and issued her a check from Edward Jones for $178,247.24 three days later. Ms. Kirpes instructed her current caregiver, Penny Taufen, to deposit the check into the newly created Sterling Savings checking account. Ms. Taufen did so.
¶ 6 Ms. Kirpes died on February 20. Her checking account contained $234,124.21 when she died.
¶ 7 Mr. Rice told Mr. Yochum the money in the joint account belonged to Ms. Kirpes' estate. So Mr. Yochum wrote the estate a check for $231,624.21. Mr. Yochum then sued the estate of Maria T. Kirpes for the money.
¶ 8 The court, sitting without a jury, heard the case. The estate moved to prohibit testimony by Mr. Yochum and Ms. Taufen on the basis of the deadman's statute, RCW 5.60.030. The court concluded that the estate had opened the door to the testimony by addressing the opening of the new account and admitted testimony by Mr. Yochum and Ms. Taufen about Ms. Kirpes' checking account. It then entered findings of fact, conclusions of law, and a judgment for Mr. Yochum for $231,624.21. The estate appealed.

DISCUSSION

JOINT TENANCY WITH RIGHT OF SURVIVORSHIP
¶ 9 The essential issue before this court turns on Ms. Kirpes' intent at the time she opened her Sterling Savings checking account with Mr. Yochum. Specifically, did she or did she not intend to create the account with Mr. Yochum with "right of survivorship"? And do the findings here support the court's conclusion that the estate failed to rebut the presumption that Ms. Kirpes intended the funds in the account to go to Mr. Yochum upon her death?
¶ 10 The trial court here concluded,
The Estate of Maria T. Kirpes has not proved by clear and convincing evidence that Maria T. Kirpes had a contrary intent as to the disposition of the funds held in the joint checking account at the time the account was created.
CP at 108 (Conclusion of Law (CL) V). It further concluded:
[T]he account between Maria T. Kirpes and Terry Yochum at Sterling Savings Bank, Clarkston, Washington, was a joint account with right of survivorship and at the time of the death of Maria T. Kirpes on February 20, 2006, Terry Yochum, as the surviving depositor, was entitled to the funds.
CP at 108 (CL IV).
¶ 11 Legal title to the funds in this account is a question of law and our review is therefore de novo. In re Estate of Krappes, 121 Wash.App. 653, 660, 91 P.3d 96 (2004). Specifically, we will pass on whether the findings here support the conclusion that Ms. Kirpes intended to create a joint account with right of survivorship.
¶ 12 There is a rebuttable statutory presumption that "[f]unds belonging to a deceased depositor which remain on deposit in a joint account with right of survivorship belong to the surviving depositors unless there is clear and convincing evidence of a contrary intent at the time the account was created." RCW 30.22.100(3); Krappes, 121 Wash.App. at 660-61, 91 P.3d 96. A presumption is an inference that a fact exists from proof of other facts. Bradley v. S.L. Savidge, Inc., 13 Wash.2d 28, 39, 123 P.2d 780 (1942) (quoting 22 C.J. 82, § 25). "When the presumption is overcome by proper evidence, it ceases to exist and cannot be further considered by the court or jury, or used by counsel in argument." Id. at 42, 123 P.2d 780.
¶ 13 The presumption here is part of the Financial Institution Individual Account Deposit Act, chapter 30.22 RCW. The legislature articulated its purpose for this legislation *202 as essentially to provide some consistency and simplicity in the relationship between and among depositors and the financial institution, RCW 30.22.020, and clearly to protect financial institutions from becoming embroiled in disputes between and among depositors. RCW 30.22.120.
¶ 14 There is no dispute here over the controlling law. The legislature created a rebuttable presumption (in favor of survivorship) that can be overcome only by clear and convincing evidence. RCW 30.22.100(3).
¶ 15 The estate contends that the contract opening the account here requires a meeting of the minds on the contract's essential terms, including the type of account being opened. And the estate says there was no meeting of the minds. Indeed, the estate argues that the bank, or more specifically Ms. Stapleton, and not Ms. Kirpes, intended to create the joint account with right of survivorship.
¶ 16 Whether an enforceable contract exists is a question of law that we review de novo. Krappes, 121 Wash.App. at 660, 91 P.3d 96. An enforceable contract requires acceptance of all material terms of the offer. Hansen v. Transworld Wireless TV-Spokane, Inc., 111 Wash.App. 361, 370, 44 P.3d 929 (2002). Acceptance is the offeree's communication by word, sign, or writing to be bound by the offer's terms. Plouse v. Bud Clary of Yakima, Inc., 128 Wash.App. 644, 648, 116 P.3d 1039 (2005).
¶ 17 The trial court found that Ms. Kirpes intended to open a joint account with right of survivorship:
At the time Maria T. Kirpes established the joint bank account on January 20, 2006, it was her intention that it would be a joint account with right of survivorship resulting in those funds going to Terry Yochum upon her death.
CP at 107 (FF 29).
¶ 18 But the only evidence supporting this finding is the account card Ms. Kirpes signed, the card that effectively opened the account. That card creates the rebuttable presumption of intent. But "[p]resumptions are the `bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.' The sole purpose of a presumption is to establish which party has the burden of going forward with evidence on an issue." In re Indian Trail Trunk Sewer, 35 Wash.App. 840, 843, 670 P.2d 675 (1983) (citation omitted).
¶ 19 Here, the estate bore its burden of production and presented the actual fact that Ms. Stapleton, not Ms. Kirpes, decided to add survivorship rights to the joint checking account. In light of that fact, the presumption that Ms. Kirpes intended to add such rights disappears, and we are left with the unchallenged finding and, therefore, verity on appeal, that Ms. Stapleton elected to add a right of survivorship to the joint account:
Maria T. Kirpes only instructed Judy Stapleton that she wanted to open up a joint account. At no time did Maria T. Kirpes tell Judy Stapleton that it was to be a joint account with right of survivorship. Judy Stapleton, on her own, elected to create a joint account with a right of survivorship and never discussed that designation with Maria T. Kirpes.
CP at 105.
¶ 20 Neither we nor the trial court can rely on finding of fact 18 to support the conclusion that Ms. Kirpes intended Mr. Yochum to have a right of survivorship. Indeed, the evidence and finding of fact 18 clearly support a contrary conclusion. CP at 105 (FF 18).
¶ 21 The record also does not support the court's finding that Ms. Kirpes intended to close her Edward Jones account and give the money from the account to Mr. Yochum by depositing the proceeds into their joint checking account. CP at 107 (FF 30). Ms. Kirpes told Mr. Leer to close her account and issue a check to get her affairs in order, and that is all she told him:
A. Maria told me that she'd like to close the account and would like me to issue a check to her.
Q. Did she tell you why she wanted to close the account?
A. She told me she was in declining health, didn't need the income [from the account] any more, would like to get her *203 affairs in order, close the account, and get a check.
Report of Proceedings (RP) (Vol. A) at 10. She signed the check upon receiving it and instructed Ms. Taufen to deposit it into her checking account at Sterling Savings:
Q. Did you have anything to do with the check that was issued by Edward Jones?
A. Yes, sir.
Q. What did you have to do with that?
A. I got it out of the mail, and I took it over to Maria to sign, and then I went and deposited it in her checking account, as she instructed.
. . . .
Q. Where was she when you took [the check] to her?
A. She was at the Clarkston Care Center.
. . . .
Q. Did she recognize what the check was?
A. Yes, sir.
Q. How do you know that?
A. Because I said that her check had come in the mail. Did she want to sign it?
And she said, yes, and you need to deposit it in my account.
Q. Did she say what account?
A. Her bank account, checking account. She always said checking account.
Q. Did Mrs. Kirpes sign the check?
A. Yes, sir.
Q. In front of you?
A. Yes, sir.
Q. And, again, where did you take the check?
A. I took it directly over to the bank and deposited it into her checking account.
Q. By bank, you mean Sterling Savings?
A. Yes, sir.
2 RP at 77-78; see Ex. PY-4. None of this supports a finding of intent to create a right of survivorship in Mr. Yochum either.
¶ 22 The trial court's findings do not show that Ms. Kirpes intended to create a joint account with right of survivorship. And we conclude that there is substantial evidence that she intended no right of survivorship. She "only instructed Judy Stapleton that she wanted to open up a joint account." CP at 105 (FF 18). "At no time did she tell Ms. Stapleton that it was to be a joint account with the right of survivorship." CP at 105 (FF 18). It was "Judy Stapleton, on her own, [who] elected to create a joint account with a right of survivorship." CP at 105 (FF 18). The designationright of survivorshipwas "never discussed . . . with Maria T. Kirpes." CP at 105 (FF 18).
¶ 23 We reverse the judgment of the trial court and remand for entry of judgment in favor of the estate.
WE CONCUR: KULIK, C.J., and KORSMO, J.